Casey, Ch. J.,
delivered tbe opinion of tbe court:
1st. On tbe 27th April, 1861, tbe claimant’s testator was tbe owner of a large and valuable farm in tbe county of Hamilton, and State of Ohio, containing about four hundred and fifty acres. On that day be entered into tbe following contract with George W. Holmes, who was tbe duly authorized agent of, and acting on behalf of, tbe State of Ohio:
“Memorandum of agreement between William Dennison, governor of Ohio, acting by George W. Holmes, and tbe -undersigned, owners of property on tbe Little Miami railroad, near Miamisville, in the county of Hamilton and State aforesaid, witnesseth:
“ First. That tbe undersigned rent for tbe purpose of military camp, so much of their land as ■ may be required by tbe State of Ohio, or tbe United States, upon tbe following terms : For lands without crops, twelve dollars per acre. For land in wheat, where there is a prospect of a good crop, twenty dollars per acre. For land plowed, but not sowed or planted, fourteen dollars per acre. For land planted in corn, fifteen dollars and fifty cents per acre. For land sowed in oats, sixteen dollars and twenty-five cents per acre. For land planted in potatoes, twenty dollars per acre. For land sowed in clover and meadows, seventeen dollars per acre. For timber land, twelve dol *413 lars per acre. The fences are to be restored; payment is to be made at the rate of sixty cents per rod for rail fence more than two years old; and for fence less than two years old, at the rate of seventy-live cents per rod.
“ Second. The State of Ohio agrees to pay the above prices per acre on or before the first day of «rune next, for the land so used and occupied, until the first day of March, 1862; and in addition any damage that may be done to other property by reason of the occupancy of the said land as a military camp.”
2d. "Under this lease the State of Ohio entered into possession of the two hundred and fifty acres of land mentioned in said agreement, and occupied it for about the space of one month, as a State military camp and rendezvous. The premises, camp, and all its appurtenances were then turned over by the State of Ohio, and with the consent of the claimant, into the possession and use óf the United States. And the rent for the first year for the two hundred and fifty acres, as stipulated in the agreement between the claimant and the State of Ohio, was paid by the officers and agents of the United States to Mr. Kugler. And we find that the United States entered into the possession and occupied the premises under the lease, and that it was not appropriated by right of eminent domain.
3d. On the 30th day of April, 1864, a duly authorized quartermaster on duty at this camp gave notice to the claimant that the United States, after that date, would cease to hold and occupy one hundred and thirty-two and fifty-two one hundreths acres of the demised premises, which ho specially designated; and thereupon he offered to surrender the same to the claimant. The claimant did not accept or agree to this surrender. The part offered to be surrendered was in the main broken, barren, and timbered lands unfit for cultivation. The part of the farm retained was rich arable lands, and contained the houses, barns, and other necessary and accessary farm buildings. This latter was held and occupied until the first day of Juno, 1866, „ when it was finally vacated and turned over to the claimant.
4th. One acre of ground was appropriated as a burying ground, which we value at the sum of two hundred dollars.
6th. The damage to the land occupied as a camp by roads, drains, and sinks, we estimate at one thousand dollars.
6th. The damage to the fences and crops of the claimant upon *414 bis adjacent lands we find to amount to tlie sum of twelve hundred and fifty dollars.
There can be no doubt that the United States entered into and maintained the possession of the claimant’s land by virtue of the lease, and which itself provided for the occupancy by the United States. They received the possession from the State of Ohio, in the same manner that it held it under the claimant. The claimant assented to the transfer. Both the United States and the claimant ratified the occupancy of the former, the one by paying, and the other by receiving the rent stipulated for in the agreement. This without any formal assignment was evidence, until rebutted by countervailing testimony, that the United States were in iwssession of the same estate which the State of Ohio held, and upon the same terms, conditions, and limitations. Taylor’s Land. and Tenant, p. 312; Acker v. Wetherill, (4 Hill, 112;) Braythwaite v. Hitchcock, (10 M. & W., 494.)
The assignee, by accepting the possession of the land, subjects himself to all covenants running with the land, and all stipulations in the lease. Taylor, 317; Van Rensalaer v. Bonestell, (24 Barb., 365;) Blake v. Sanderson, (1 Gray, 332.) And each successive occupant of the premises is liable for the rent by reason of his possession. Possession, in such cases, is the foundation and boundary of the liability. Taylor, 323; Carter v. Hammett, (18 Barb. Rep., 608.)
ADd where the hiring is by the year, and the landlord suffers the tenant to remain, and the tenant continues to occupy the premises, it constitutes a tenancy from year to year upon the terms of the lease, and subject to all its covenants. Taylor, p. 39; Salisbury v. Hall, (12 Pick, 416;) Lamarue v. Dougherty, (35 Penna., 45; 8 D. & R., 55;) Desford v. Walbridge, (15 N. Y., 374.) These authorities will sufficiently show that under the facts, as we find them in this case, that whatever rights were conferred or obligations created upon the one side or the other by the lease continued between the claimant and the United States. In other words, the lease remained, the United States entering into the possession instead of the State of Ohio, assuming all the obligations of the latter under the lease, and entitled to all the privileges and rights it conferred. It is therefore by the lease, and by the time, extent, and manner of oceu- *415 pancy that the respective demands and liabilities of the parties are to be measured and determined.
Where a tenant surrenders a part of the premises, the rent will be apportioned and payable only in respect of the part retained. Stevenson v. Lombard, (2 East. Rep., 580,) Stor. Eq. Jur., §§ 475 to 485; Taylor, §§ 279, 443. But this principle is predicated of a case where either the tenant has a right to surrender a part of the premises, or where the landlord assents to the surrender either expressly or impliedly by receiving the premises or occupying them otherwise.
In this case the lease was for the entire tract of two hundred and fifty acres. There was nothing in it which authorized the relinquishment of any part without surrendering the entire premises. The evidence instead of shoving that KLugler agreed to accept the surrender he expressly refused to do so. In view of these facts we cannot see how the payment of the entire rent, up till the first of June, 1866, can be successfully resisted.
The majority of the court are of opinion that the claimant should recover, as follows:
Bent of 250 acres, 4 years and 3 months, at $12 per acre...$12,750
One arce of ground for cemetery. 200
For damage to lands occupied by drains, roads, sinks, &c. 1,000
Damage to crops on claimant’s adjacent lands, 4 years - 1,250
15,200
And in accordance with these views we direct a judgment in favor of claimant for the sum of fifteen thousand two hundred dollars, ($15,200.)

Order suspending judgment.

And now, to wit, May 26,1869, it is further considered and adjudged by the court here, that no certificate for the payment of the foregoing judgment shall be issued until the claimant shall file a deed, or other sufficient conveyance to the United States, for such part of the lands formerly occupied as “ Camp Dennison,” in the State of Ohio, as were then used as a cemetery or burying ground by the United States. The said deed or conveyance to give to the United States the right to hold, *416 use, and occupy tlie same, as a cemetery, for sucb time and in such, manner as tlie said United States through their legally constituted authorities shall order and direct. The said United States also to have free ingress and egress to and from said cemetery, over any intervening lands belonging to the said John Kugler, his hems or assigns. And the said deed or conveyance shall be accompanied with a draft or diagram describing the said cemetery by courses and distances and by metes and bounds, and showing the road, entrance, or approach to the same. And said diagram and deed shall be accompanied by the certificate of a commissioner of this court, that he has personally examined and inspected the premises, and that they are laid off and set apart according to the terms of this decree, and are correctly described in said diagram and deed. All of which being approved by this court, if in session, or by a judge thereof at chambers, in vacation, shall be filed of record in the cause, and thereupon the judgment heretofore directed shall become final. And until this decree shall have been complied with it is suspended.
BT THE COURT.
Peck, J: I do not concur in the foregoing opinion, because I think the damages too large.