## WEST & DODGE CO. v. BETHLEHEM SHIPBUILDING CORPORATION, Limited.

(District Court, D. Massachusetts.    April 7, 1920.)

### No. 1112.

Army and navy ☞27—Power to modify contracts does not apply to subcontracts.

The power to modify or cancel contracts for naval vessels given by Act March 4, 1917, does not apply to subcontracts between the original contractor and others, even though the original contract was on a cost plus basis, and the contractor cannot avoid payment for supplies furnished under a contract approved by the compensation board, on the ground that thereafter the compensation board withdrew its approval and fixed the price for the supplies at a sum less than the contractor had paid.

At Law. Action by the West & Dodge Company against the Bethlehem Shipbuilding Corporation, Limited. On demurrer to answer. Demurrer sustained.

Ralph M. Smith, of Boston, Mass., for plaintiff.
G. W. Currier, of Boston, Mass., for defendant.

MORTON, District Judge. The plaintiff has demurred to the defendant's answer, and the question is whether the answer discloses any defense. It is not necessary to restate all the somewhat complicated facts and statutes involved, as stated in the answer.

The order for oil burners, etc., given by the defendants to the plaintiff, which was accepted by the latter, constituted a contract between the parties. The price therein agreed upon was, by the terms of the contract between the defendant and the government, subject to the

approval of the compensation board of the Navy Department. It was submitted to the board, which required a slight reduction by the plaintiff, and approved the price as reduced. The contract thereupon became effective, binding both parties to it. It covered oil burners and appliances for 40 destroyers, and was fully performed by the plaintiff. The defendant paid the plaintiff large sums under it. Then the compensation board rescinded its approval of the price, and fixed a new price at less than one-half that originally approved. According to the new price, the defendant has overpaid the plaintiff. It therefore refuses to make further payments. The defendant is, in effect, acting for the United States; briefs have been submitted by the Navy Department and by the United States attorney.

The short and sufficient answers to the contentions of the defendant and of the government is that the act of March 4, 1917 (39 Stat. 1168), on which their position rests, regulates only transactions between the government and persons with whom it deals. It does not apply to subcontracts and more remote dealings. The language of the act had been used in previous statutes, and had been so construed by government officials for a number of years. 29 Op. Attys. Gen. 14, 44. The only distinction suggested for the defendant, differentiating the case at bar, is that here the principal contract is on a "cost plus" basis, while the other contracts were at fixed prices. But the act either stops at the first contractor or it does not; I do not see that the form of the contract can affect the scope of the act. The defendant was not acting or purporting to act as agent of the United States, but on its own behalf.

The construction given by the Attorney General, supra, seems to me the only sensible and practical one. To say that the price of every screw entering into these vessels can be followed back through dealers and jobbers to the original manufacturer, and revised if at any point in the chain what is regarded as undue profit was charged approaches absurdity; but that would be the result of the government's contention. Moreover, the contract itself clearly shows that the parties contemplated that the contractor might purchase, either at fixed prices (Contract, art. 22, par. 7), or on a "cost plus" basis (Id. par. 3). As to the former sort of purchases, the contract expressly makes the prices subject to the approval of the compensation board of the Navy Department; as to the latter, it expressly reserves the right to investigate and check the actual costs on subcontracts. The system appears adequate to safeguard the government's interests. The fact that in particular instances there may have been failures under it is no sufficient reason for sanctioning a repudiation by the government of the approval of its own board specifically provided for in its contract (see U. S. v. North American Commercial Co. (C. C.) 74 Fed. 145; Kugler v. U. S., 4 Ct. Cl. 407; Wilder v. U. S., 5 Ct. Cl. 468), or reversing the previously accepted ruling on identical language, which appears to be well grounded.

Various other points have been argued. As they involved only questions of law, and as what has been decided is sufficient to dispose of the case, it is unnecessary to pass upon them.

Demurrer sustained.