CAPITOL AIRWAYS, INC. *v.* INDIANAPOLIS POWER & LIGHT CO.

[No. 27,141. Filed January 31, 1939. Rehearing denied May 1, 1939.]

*Miller, Miller & Bredell,* for appellant.

*John G. McNutt, John E. Scott,* and *Elmer Scott,* for appellee.

FANSLER, J.—The appellant operates and maintains an airport and commercial flying field adjacent to the City of Indianapolis. The appellee, a public utility, acquired a private right of way for the construction of an electrical transmission line upon property, which is across a highway from the land upon which the appellant operates its business, and constructed a power line consisting of steel towers about 90 feet in height and about 400 feet apart, to which were strung electric

wires for the transmission of 132,000 volts of electricity. The appellee's power line parallels the land upon which appellant's business is located upon the east, and is from 100 to 250 feet from the boundary of appellant's land.

The appellant brought this action alleging the facts above recited; that the wires of the appellee's power line are uninsulated; that its flying field is so small that airplanes may not land or leave the field without flying low over adjacent land; that the transmission line constitutes an obstruction for airplanes approaching plaintiff's airport from the southeast, east, and northeast, and leaving in the same direction; that in addition to the danger and hazard of airplanes colliding with the wires, there is the additional hazard and danger of destruction from the high and dangerous current of electricity carried in the wires; that these dangers will cause the operators of airplanes to discontinue using the appellant's field; that this constitutes an interference with the plaintiff's right to the free use of the space over its airport, and that it constitutes an interference with and a destruction of the plaintiff's established business; that as a result plaintiff was damaged in the sum of $150,000.

A demurrer to the complaint was sustained, upon which ruling appellant predicates error.

It is appellants' theory that section 20-304 Burns' Ann. St. 1933, section 10090 Baldwin's Ind. St. 1934, requires "that in the transmission and use of electricity of a dangerous voltage, full and complete insulation shall be provided at all points where the public or any employees of the owner, contractor or subcontractor transmitting or using said electricity are liable to come into contact with the wire or wires"; that the maintenance of the appellee's power line, which is uninsulated, is therefore unlawful, since the general public travel-

ing in airplanes is liable to come in contact with the wires.

Webster defines the word "insulate" as follows: "1. To make an island of. 2. To place in a detached situation, or in a state of isolation; to isolate; specif.: a Physics. To separate from conducting bodies by means of nonconductors, as to prevent transfer of electricity or heat." The appellee's power line is erected upon its private property, upon wires suspended from towers high above the ground. It is a matter of common knowledge that the purpose of this type of power line construction is to isolate the wires, to put them in a detached situation, and to separate them from conducting bodies. This, then, is insulation. The only question remaining is whether it is sufficient insulation to free the defendant from the charge of unlawfulness in respect to insulating its wires. No method of insulation is fixed by the statute. The only standard is that there shall be full and complete insulation where the public or others "are liable to come into contact with the wire or wires." If the statute requires more than common-law care, it is to be strictly construed against unlawfulness. Except for the proximity of the flying field, it would hardly be suggested that the wires on such a power line are so located that the general public is "liable to come into contact with the wire or wires." Members of the public might come into contact with the wires by trespassing upon the land and climbing the towers, but the statute is not for the protection of such.

Section 14-103 Burns' Ann. St. 1933, section 4046 Baldwin's Ind. St. 1934, declares that: "The ownership of the space above the lands and waters of this state is declared to be vested in the several owners of the surface beneath, subject to the right of flight described in section 4." The next section

is as follows: "Flight in aircraft over the lands and waters of this state is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. . . ." The word "then" must be interpreted as referring to the existing use of the land at the time of the flight. The establishment of an airport upon the appellant's land in no way affected or limited the right of adjacent landowners to use their land in any manner and for any purpose for which they might have used it before. Had the appellee chosen to erect flagpoles, factory chimneys, or tall buildings across the whole of its land, and several times as high as its power line, it was within its rights notwithstanding it might have entirely prevented the landing of airplanes at appellants airport. It cannot be said that the appellee might reasonably have anticipated that the general public was liable to come in contact with its high tension wires upon its power line. The flight of an airplane across its land at such a low altitude as to interfere with the land for the purpose of maintaining a power line is expressly made unlawful by the statute, and the statute cannot be construed as requiring the appellee to guard against this unlawfulness any more than to guard against the unlawfulness of a trespasser who climbs its towers and thus comes in contact with the wires.

Appellant says in effect that the operators of airplanes in their flight to and from the field must violate the law by flying at such an altitude as will interfere with the use of the appellees land for the purpose of maintaining a transmission line, and, because of the dangerous high voltage in the line and fear of death, they fear to commit such acts of unlaw-

fulness; that, as a result, the usefulness of the field as an airport is destroyed, and that the appellee must pay the resultant damage. The appellee's power line interferes with none of the appellant's rights. It owes no duty to protect the public against dangers that cannot reasonable be anticipated. The owner of property is under no duty to keep the premises safe for a trespasser, who comes without enticement, allurement, or invitation. *Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330, 79 N. E. 186; *Knapp* v. *Doll* (1913), 180 Ind. 526, 103 N. E. 385. The demurrer was properly sustained.

Judgment affirmed.