**GUITH et al. v. CONSUMERS POWER CO.**

No. 126.

District Court, E. D. Michigan, N. D.

Dec. 13, 1940.

Johnson & Johnson, of Pontiac, Mich., for plaintiffs.

Brownell & Gault, of Flint, Mich., and W. R. Roberts, of Jackson, Mich., for defendants.

TUTTLE, District Judge.

The plaintiffs are operators of the Grand Blanc Airport, situated about four miles south of Flint, Michigan. The defendant owns in fee land adjacent to the airport upon which it is about to erect an electric transmission line consisting of pole structures and wires. The plaintiffs filed a bill of complaint for an injunction restraining the defendant from erecting said line.

The defendant filed a motion to dismiss the bill of complaint, alleging that the same failed to state a claim against the defendant upon which relief could be granted, stating, among other reasons, that:

(a) The plaintiffs have no right, title or interest in the defendant's land or the air space above it for a reasonable and useful altitude.

(b) That the electric transmission line is a lawful, reasonable and necessary use of the defendant's land and the overlying air space; and

(c) That the flight of airplanes over the defendant's land at such low altitude as to

interfere with the use of said land by defendant for said transmission line is unlawful.

The fundamental issue involved in this case is: Does the landowner own the air space above the land to a height necessary for occupancy of an electric transmission line to the exclusion of airplanes using an adjacent airport?

The bill of complaint does not allege any right in the plaintiffs to use the air space over the defendant's land for low altitude flying incident to the take-off and landing of airplanes at the airport, which is superior to the right of the defendant to use its land for said transmission line. Neither have the plaintiffs cited any authority establishing such right, and the court believes no authority can be cited therefor.

In the Restatement of the Law of Torts by The American Law Institute, the common law on the relative rights of the landowner and the aviator to the use of air space above the surface of the earth is stated as follows:

"Section 159, Comment e:

"An unprivileged intrusion in the space above the surface of the earth, at whatever height above the surface, is a trespass."

"Section 194—Travel Through Air Space.

"An entry above the surface of the earth, in the air space in the possession of another, by a person who is traveling in an aircraft, is privileged if the flight is conducted:

"(a) for the purpose of travel through the air space or for any other legitimate purpose,

"(b) in a reasonable manner,

"(c) at such a height as not to interfere unreasonably with the possessor's enjoyment of the surface of the earth and the air space above it, and

"(d) in conformity with such regulations of the State and federal aeronautical authorities as are in force in the particular State."

Act 224 of the Public Acts of Michigan for 1923, being Sections 4811–4821, Compiled Laws of 1929, and Sections 10.21 to 10.29, Michigan Statutes Annotated, pertains to aeronautics over land and water. Sections 3 and 4 of said Act are as follows:

"Sec. 3. The ownership of the space above the lands and waters of this state is declared to be vested in the several owners of the surface beneath, subject to the right of flight described in section four [4]. [C.L. '29, Sec. 4813.]

"Sec. 4. Flight in aircraft over the lands and waters of this state is lawful, unless at such low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. The landing of an aircraft on the lands or waters of another, without his consent, is unlawful, except in the case of a forced landing. For damages caused by a forced landing, however, the owner or lessee of the aircraft or the aeronaut shall be liable, as provided in section five [5]. [C.L. '29, Sec. 4814.]"

The State of Indiana has the identical statutory provisions above mentioned and the same were construed by the Supreme Court of Indiana in the case of Capitol Airways, Inc. v. Indianapolis Power & Light Company, 215 Ind. 462, 18 N.E.2d 776, 778.

In the Capitol Airways case, supra, the airport operator brought a suit against the defendant public utility to recover damages resulting from the destruction of the usefulness of the airport. From an adverse judgment, the plaintiff appealed and the judgment of the lower court was affirmed. In this case, the public utility had acquired a right of way for the construction of an electric transmission line upon property across the highway from the airport of the plaintiff. The transmission line consisted of steel towers ninety feet in height carrying 130,000 volts. Plaintiff contended that its flying field was so small that airplanes could not land or leave the field without flying over the adjacent land and that the transmission line obstructed the approach of airplanes to the airport, and created a flying hazard which would result in discontinuing the use of the plaintiff's airport and would destroy plaintiff's business. A demurrer to the plaintiff was sustained. The court, after quoting the sections of the Uniform Aeronautics Law hereinabove set forth, stated:

"The word 'then' must be interpreted as referring to the existing use of the land at the time of the flight. The establishment of an airport upon the appellant's

land in no way affected or limited the right of adjacent landowners to use their land in any manner and for any purpose for which they might have used it before. Had the appellee chosen to erect flagpoles, factory chimneys, or tall buildings across the whole of its land, and several times as high as its power line, it was within its rights notwithstanding it might have entirely prevented the landing of airplanes at appellant's airport. It cannot be said that the appellee might reasonably have anticipated that the general public was liable to come in contact with its high tension wires upon its power line. The flight of an airplane across its land at such a low altitude as to interfere with the land for the purpose of maintaining a power line is expressly made unlawful by the statute, and the statute cannot be construed as requiring the appellee to guard against this unlawfulness any more than to guard against the unlawfulness of a trespasser who climbs its towers and thus comes in contact with the wires. * * *

"The appellee's power line interferes with none of the appellant's rights. It owes no duty to protect the public against dangers that cannot reasonably be anticipated. The owner of property is under no duty to keep the premises safe for a trespasser, who comes without enticement, allurement, or invitation. * * *"

The common law as set forth in the Restatement of the Law of Torts and the statutory law of Michigan recognize air space ownership in the landowner subject to a public right or privilege of flight. This, however, does not mean indiscriminate flight at any altitude irrespective of the use of the land by the landowner, but only such flights are privileged and lawful as do not interfere with the lawful use and possession made and to be made by the landowner of the surface and the air space above it. Any use of the air space over land which is injurious to the land or impairs or interferes with the possession or enjoyment thereof is unlawful.

The coming of the airplane has not taken away any of the rights of the landowner to the use and enjoyment of his land and the air space above it. The privilege or right of airplanes to fly through the air space recognized by the common law and in the statutory law of Michigan is limited to that portion of the air space which the landowner does not need or want and the use of which does not interfere with the use, occupation or enjoyment of the land or the air space above it by the landowner.

The motion to dismiss the bill of complaint is granted.