**RUDD v. WALLACE et al.**

No. 15155.

Court of Civil Appeals of Texas.
Fort Worth.

July 14, 1950.

Christopher & Bailey, Fort Worth, for appellant.

Price Daniel, Attorney General of Texas, and Durward M. Goolsby, Assistant, for appellees.

McDONALD, Chief Justice.

The appeal is from an order of the trial court denying an application for a temporary injunction.

Appellant Rudd, plaintiff below, alleged that he was engaged in the business of leasing buses, that such was a lawful business, and that it was not subject to regulation by the Railroad Commission of Texas under the provisions of Article 911a, Vern.Tex. Civ.St. Named as defendants were the Railroad Commission of Texas and its three members, and certain named enforcement officers for said Commission. The amended petition described in detail the manner of leasing such buses, and denied that plaintiff performed certain specified functions ordinarily performed by common carriers of passengers. The petition alleged that the defendants and each of them were asserting a right to regulate plaintiff's business and to require him to obtain from the Railroad Commission a certificate of convenience and necessity under the provisions of Article 911a, and were threatening plaintiff with prosecution and imposition of fines and penalties for alleged violation of Article 911a, and further alleged that in so doing the defendants were acting beyond the scope of any authority conferred upon them by the law and that defendants were trespassing upon plaintiff's civil rights and property. The petition alleged that defendants were also threatening the lessees of such buses with criminal prosecution and imposition of fines and penalties in an effort and conspiracy to destroy plaintiff's business. It was further alleged that since the filing of the present suit the Attorney General of Texas, purporting to act upon the request of the Railroad Commission, had instituted a suit in the District Court of Travis County, seeking to enjoin plaintiff and to recover penalties. It was alleged that an enforcement officer of the Commission had harassed a named driver of one of plaintiff's buses at a specified time and place and had required the bus to be stored in Brownsville and had forbidden the driver to move it.

The prayer of the petition was that the defendants, and all of their agents, servants, representatives, etc., be temporarily enjoined from interfering with plaintiff in the conduct of his business as described in the petition, and from interfering with the use of said buses when leased to third persons, and from filing suits or complaints of any character and from further prosecuting suits already filed, until the present case had been finally determined. The petition also prayed for adjudication upon final trial that plaintiff's business, as described in the petition, was not subject to regulation by the Railroad Commission under any provision of existing law, for permanent injunction, and for general relief.

The evidence adduced at the hearing on the application for temporary injunction, including testimony of plaintiff and others concerning the leasing of buses, covers two hundred pages in the statement of facts. The trial court filed separate findings of fact and conclusions of law. The findings of fact pertained largely to the leasing of certain buses on April fifth and April tenth of 1950. Plaintiff testified, and the trial court so found, that plaintiff held a certificate from the Railroad Commission which authorized him to make what were called "charter" trips from certain points within Tarrant County, but not from other points.

The two conclusions of law filed by the court read as follows:

"1. That there is no distinction between the trips of the motor-propelled vehicles in issue, over the public highways of the State of Texas, from Denton, Texas, and return, as "Charter" of "Special Party" trips, as those terms are defined in General Orders Nos. 56 and 56-A of the Railroad Commission of Texas and the purported leases by S. A. Rudd.

"2. That, under the facts, the court finds that the plaintiff is not entitled to an injunction."

Reduced to simple terms, plaintiff's contention is that the leasing of buses is not subject to regulation by the Railroad Commission, while the contention of defendants is that the purported leasing of buses was a mere subterfuge, and that plaintiff was actually, on the occasions referred to, acting as common carrier without having procured the required authority from the Railroad Commission to operate as a common carrier over the routes traversed by the buses.

■■ It appears from their respective briefs that the parties do not differ about

the proposition that the leasing of trucks or buses is a lawful one, and that it is not subject to regulation by the Railroad Commission under Article 911a, but that it may be a question of fact whether or not the leasing of a bus or a truck in a given instance is a bona fide lease or a mere subterfuge to evade the regulatory provisions of the statute in question. Anderson, Clayton & Co. v. State, 122 Tex. 530, 62 S.W.2d 107; Id., 125 Tex. 453, 82 S.W.2d 941; Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837; Reavley v. State, 124 Tex.Cr.R. 528, 63 S.W.2d 709; Georgia Truck System v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210.

There was some evidence, we think, to support a finding that the leases made on April fifth and tenth, or at least some of them, may not have been bona fide leases, but that the real relation of the parties was intended by them to be that of carrier and passenger. It is not entirely clear to us whether the findings of the trial court were to the effect that the leases on said dates amounted to a mere subterfuge, or whether the findings were to the effect that there was no distinction between a leasing of buses and the carrying of passengers on charter or special party trips as defined in General Orders 56 and 56-A promulgated by the Railroad Commission. But in either event, we are not prepared to say that the order of the trial court denying the application for temporary injunction should be reversed. The transactions had on April fifth and tenth were past events, and no relief with respect thereto could be had by the issuance of a temporary injunction. Whether future transactions should be treated as leases, or as a subterfuge to cover up an actual carrier and passenger relation created in violation of law, would have to be decided on the facts of such future transactions. Seemingly we do not have a case where the Railroad Commission and those acting for it are claiming that every leasing of buses is subject to regulation by the Commission, and in violation of law if not done pursuant to a permit issued by the Commission, but we have a case where it is claimed that the facts pertaining to certain past transactions show them to have been in fact, not a mere leasing of buses, but an operation of them by the owner as a common carrier.

■ It has many times been said that in all appeals from interlocutory orders granting or refusing a writ or dissolving or refusing to dissolve one, the sole question is whether the trial court abused its discretion in entering the order appealed from. 24 Tex. Jur., p. 313. This is especially true if the order was based on conflicting evidence. Id., p. 314. An abuse of discretion may appear in cases where the facts are undisputed and the issue is one of law only. Germany v. Pope, Tex.Civ. App., 222 S.W.2d 172, writ ref. n. r. e.; Wheelis v. Wheelis, Tex.Civ.App., 226 S. W.2d 224.

■ It is not necessary at this stage of the litigation to undertake to detemine whether or not the case falls within the rules pronounced in Ex parte Sterling, 122 Tex. 108, 53 S.W.2d 294; and Ex parte Phares, 122 Tex. 104, 53 S.W.2d 297, cited by appellees. Our decision on this appeal is limited to deciding whether or not the record shows an abuse of discretion on the part of the trial court in refusing to issue the temporary injunction, and it is our holding that such abuse of discretion is not shown.

Affirmed.