**Carlyle HERRING and Bessie M. Herring**

v.

**UNITED STATES.**

No. 206–56.

United States Court of Claims.

June 4, 1958.

Grover C. Robinson, Jr., Pensacola, Fla., Robinson & Roark, Pensacola, Fla., on the briefs, for plaintiffs.

Herbert Pittle, Washington, D. C., with whom Perry W. Morton, Asst. Atty. Gen., for defendant.

WHITAKER, Judge.

This is a suit for just compensation for the alleged taking of an easement of flight over plaintiffs' property.

Since 1922 defendant has maintained Corry Field as a Naval Auxiliary Air Station, just outside of Pensacola, Florida, for the training of pilots. The planes used for training were light, single-engine, propeller-driven craft.

In 1949 plaintiffs purchased a lot immediately adjacent to the East Field of the station, and built thereon, first a small cottage and garage, and then a three-bedroom house, and three or four parking areas for trailers. These were built directly under the approach zone to runway 29–11 in the East Field of the station, but between the end of the runway and the house there were a number of tall trees, over which the planes had to fly, thus requiring them to fly over the house and cottage at elevations of from 75 to 150 feet above the ground.

In September 1950, after the erection of the cottage and house and other improvements on the property, the Navy sought and secured plaintiffs'[1] permission to cut 40 to 50 of the tallest trees between the end of the runway and plaintiffs' house. This removal of the shelter of the trees permitted the planes to fly at elevations only 15 feet above plaintiffs' house and only 7 to 9 feet above the television antenna on the top of the house, which was about 45 feet above the ground. This was the minimum safe glide angle. They occasionally flew at these elevations, but normally they flew from 45 to 75 feet above the ground in taking off, and from 100 to 150 feet in landing. There were no flights at night.

The removal of these trees, permitting flights at considerably lower elevations, unquestionably increased the danger from accidents, and also increased the noise and vibration, and thus affected the value of the property.

Defendant paid plaintiffs nothing for permission to remove the trees, nor for the flight easement at lower elevations, made possible by their removal. Somewhat later it did ask plaintiffs to execute a formal avigation easement over their property at elevations of 25 feet and above, but plaintiffs declined to do so, but made defendant a counter offer to sell the property to it at cost, or to give it an easement of flight at the desired elevation, provided it would terminate upon the sale of the property by plaintiffs. Nothing came of these negotiations.

1. Carlyle Herring was an aviation machinist in the Navy.

Defendant has never paid plaintiffs anything for the easement of flight at elevations below 75 feet. Above this elevation, defendant for many years had flown its planes over the property. Plaintiffs are barred from maintaining a suit for compensation for such an easement, and seeks none. Plaintiffs say that flights at these elevations did not substantially interfere with their use and enjoyment of their property, but they say that flights at 45 feet or thereabouts do seriously interfere with its use and enjoyment. We do not doubt that this is so. ·Property over which planes occasionally passed at not more than 7 or 9 feet above the antenna on the top of the house, and normally at slightly higher elevations, could not be very valuable as a residence. The removal of the shelter of the trees, which made possible flights at these low elevations, undoubtedly depreciated the value of the property.

It is for this depreciation in value, caused by the removal of the trees, resulting in frequent flights over the property at 45 feet above the ground, that plaintiffs are entitled to recover. United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206; Causby v. United States, 60 F.Supp. 751, 104 Ct.Cl. 342; Id., 75 F.Supp. 262; 109 Ct.Cl. 768; Highland Park, Inc., v. United States, Ct.Cl., 161 F.Supp. 597; United States v. 4.43 Acres of Land, D.C., 137 F.Supp. 567; United States v. 29.40 Acres of Land, D.C., 131 F.Supp. 84; Reaver v. Martin Theaters of Florida, Inc., Fla., 52 So.2d 682, 25 A.L.R.2d 1451; Cason v. Florida Power Co., 74 Fla. 1, 76 So. 535, L.R.A.1918A, 1034; Smith v. New England Aircraft Co., 270 Mass. 511, 528, 170 N.E. 385, 69 A.L.R. 300; Capitol Airways v. Indianapolis Power & Light Co., 215 Ind. 462, 18 N.E.2d 776.

The taking occurred in 1950, and, hence, is not barred by the statute of limitations, nor by the Assignment of Claims Act (31 U.S.C.A. § 203), since plaintiffs owned the property at the time.

The amount of just compensation is found by the trial commissioner to be $5,500. The defendant does not contest this amount, if it is held that plaintiffs are entitled to recover at all. Plaintiffs claim a higher sum, but, notwithstanding the flights of these planes at these low elevations, plaintiffs have kept their property rented practically the entire time, and they have not shown any monetary loss actually realized up to this time. However, we think they will have great difficulty in disposing of the property at all, and when they come to do so, we think that they will suffer a loss of not less than $7,500, or perhaps more. At any rate, we are of opinion that the market value of the property has depreciated by $7,500 as a result of the lowering of the elevation of the flights over the property to 45 feet.

Judgment for $7,500, plus interest thereon at 4 percent per annum from October 1, 1950 to time of payment, will be entered against defendant and in favor of plaintiffs, all as just compensation for the taking. Upon payment thereof, defendant shall have an easement of flight for light, propeller-driven, single-engine airplanes at a minimum elevation of 45 feet above the surface of the ground and higher.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

LARAMORE, Judge (dissenting).

I believe the low-level flights have created not only noise and vibration, but have also created a hazard such as to make plaintiffs' property practically worthless and hence constitutes a total taking.

I would give judgment to plaintiffs for the total fair market value of the property as just compensation provided plaintiffs surrender title to the Government. Ferrell v. United States, 49 Ct.Cl. 222; Kugler v. United States, 4 Ct.Cl. 407.