**SOUTHWEST WEATHER RESEARCH, INC., et al., Appellants,**

v.

**Joe ROUNSAVILLE et al., Appellees.**

No. 5352.

Court of Civil Appeals of Texas.

El Paso.

Nov. 26, 1958.

Rehearing Denied Jan. 21, 1959.

Turpin, Kerr, Smith & Dyer, William M. Kerr, Raymond A. Lynch, Midland, for appellants.

Henry Russell, Pecos, W. B. Browder, Jr., Milton Bankston, Tom Sealy, Midland, for appellees.

PER CURIAM.

This is an appeal from an injunction issued by the Eighty-third District Court, Jeff Davis County, Texas, which said injunction commands the appellants "to refrain from seeding the clouds by artificial nucleation or otherwise and from in any other manner or way interfering with the clouds and the natural condition of the air, sky, atmosphere and air space over plaintiffs' lands and in the area of plaintiffs' lands to in any manner, degree or way affect, control or modify the weather conditions on or about said lands, pending

final hearing and determination of this cause; and from further flying over the above-described lands of plaintiffs and discharging any chemicals or other matter or material into the clouds over said lands." Appellees are ranchmen residing in West Texas counties, and appellants are owners and operators of certain airplanes and equipment generally used in what they call a "weather modification program," and those who contracted and arranged for their services.

It is not disputed that appellants did operate their airplanes at various times over portions of lands belonging to the appellees, for the purpose of and while engaged in what is commonly called "cloud seeding." Appellants do not deny having done this, and testified through the president of the company that the operation would continue unless restrained. He stated, "We seeded the clouds to attempt to suppress the hail." The controversy is really over appellants' right to seed clouds or otherwise modify weather conditions over appellees' property; the manner of so doing; and the effects resulting therefrom. Appellants stoutly maintain that they can treat clouds in such manner as will prevent the clouds from precipitating hail, and that such operation does not and cannot decrease either the present or ultimate rainfall from any cloud or clouds so treated. Appellants were hired on a hail suppression program by a large number of farmers in and around Fort Stockton and other areas generally east, or easterly, of Jeff Davis County. It was developed that the farmers' land was frequently ravaged by damaging hail storms, which appellants claim originated in and over the Davis Mountains in the Jeff Davis County area.

The appellees' testimony, on the other hand, which was elicited from several witnesses, was to the effect that this program of cloud seeding destroyed potential rain clouds over their property.

The trial court, in granting the temporary injunction, found as a matter of fact that appellants were engaging in day-to-day flying airplanes over appellees' lands and into the clouds over appellees' lands, and expelling a foreign substance into the clouds above appellees' lands in such a manner that there was a change in the contents of the clouds, causing them to be dissipated and scattered, with the result that the clouds over plaintiffs' lands were prevented from following their natural and usual course of developing rain upon and over and near plaintiffs' lands, thereby resulting in retarded rainfall upon plaintiffs' properties. The court further held that such was injurious to appellees and was in interference of their property rights, and would cause irreparable damage if not restrained.

It has long been decided that in cases of this sort we must affirm the decision of the trial court unless it is clearly shown that he abused his discretion in granting the temporary injunction: Rudd v. Wallace, Tex.Civ.App., 232 S.W.2d 121; 24-A, Tex.Juris., ¶ 265, p. 382. Therefore, we must now examine the evidence to see if the trial court's action was proper.

First of all, appellant Kooser, the president of defendant corporation, who was in charge of the operations, when asked if he could prevent or lessen hail, answered as follows: "We feel that we have indicated something along that line in this area." He further admitted that he was trying to and was changing weather conditions, but denied that he depleted any potential or active precipitation, and maintained that, on the contrary, his operation tended to increase precipitation. The experts did not agree in their testimony. Witnesses Quate and Moyer, after qualifying, explained the processes of cloud formation and rain making, and stated positively that seeding clouds, as was done here, with silver iodide or salt brine or both, could not depreciate, deplete or destroy the rain potential of a cloud that was likely to produce rain. They did testify that unimportant clouds with no rain potential could be dissipated. Wit-

ness Battle testified that in his opinion overseeding of potential rain clouds could diminish or destroy their rain-making power. All experts agreed that the impregnation of clouds with foreign particles or nuclei would, when carried up to the freezing top of the cloud by a warm updraft, help precipitation to occur by drawing minute droplets of moisture to their surface until they became heavy enough to fall out of the cloud as precipitation. Witness Battle maintained that overseeding would cause a surplus of nuclei, so that the droplets would never get big enough to fall out. The other two experts denied that this could happen and testified that the type of operation here concerned would increase precipitation and prevent hail. Reference was made to various articles and publications as, for example, the September 1953 Bulletin of the American Meteorological Society, wherein the writer, R. T. Beaumont, maintains that a two-year cloud seeding program in southern Oregon decreased, instead of increasing, the annual precipitation in the area under study. Quate and Moyer both disagreed with this finding. Then there is reference to a statement in Vol. 1, Page 43, of the Stanford Law Review, which quotes Vincent Schaefer as saying that he believed that rain could be prevented by overseeding clouds. In Volume 45 of the California Law Review, Page 702, this statement is found:

"On the other hand, if through accident or design a storm is overseeded, the effect can be to form so many ice crystals that they disperse the moisture in the freezing zone and thus destroy the basic conditions for precipitation. This is the process involved in hail dispersion."

Witness Battle, when asked the following question:

"Q. In the type of cloud we have been talking about here, the thunderhead in the Davis Mountain area, which occur in the summer months, when you stop hail, do you stop rain?

A. I would say you slow it down considerably and many times it absolutely stops it."

Then, finally, we have the statement on Page 707, Volume 45 of the California Law Review, as follows:

"Scientific and mathematical evaluation of the results of cloud seeding is in its experimental infancy.",

citing as authority therefor several articles and publications. It is therefore clear that there was sharp divergence in the expert testimony presented to the trial court.

On behalf of the appellees' position there were eleven witnesses. They testified that on various occasions they had been observing what they considered rain clouds over their property. They testified that these were clouds from which they usually got rain and which, in their opinion, would probably produce rain. In several instances it had begun to rain or sprinkle. Some of these witnesses testified to a lifetime and others to many years of practical and actual observation of clouds and the formation of those clouds which produced rain. For example, witness Jim Duncan testified he had been in the area since before the turn of the century, and that it was the habit of ranchers to observe and evaluate all clouds with the idea of whether or not rain could be expected therefrom. He testified that his land was ranch land which depended upon the natural elements, such as rain, to grow feed and forage for his livestock. Without detailing the individual testimony of each witness, they all generally agreed that they would be observing a potential rain cloud or thunderhead which they were confident was going to produce rain on their property, when appellants' plane or planes would show up. Now appellants denied ever flying into any clouds, saying that it was dangerous and they wouldn't do it. But witnesses for appellees testified that they had seen the planes going into the clouds. In any event they were generally agreed—all of them—that when the plane or planes showed up and began spraying the foreign

substance, in some ten to twenty minutes the potential rain cloud or thunderhead would be destroyed and dissipated, leaving only a fuzzy or wispy type of mist. As one witness said, it seemed like a "nightmare." Another one stated he would remember it to his "dying day." Now these witnesses all testified flatly that the airplane action destroyed clouds that they felt were going to produce rain on their property, and that such clouds were over their property when the airplane appeared. In several instances the lay witnesses testified that the sprinkle or rain stopped as soon as the airplane began its operation. In another instance it was testified that half of the ranch got a rain and the other half didn't, and the witness blamed this phenomenon on the activity of the airplane and its area of operation.

So, summing up the fact situation or the evidence that was before the trial court, we find that the three appellees and other witnesses testified that they had visually observed the destruction of potential rain clouds over their own property by the equipment of the appellants. They testified that they had seen this happen more than once. The experts differed sharply in the probable effect of a hail suppression program accomplished by the cloud seeding methods used here. The trial court apparently, as reflected by his findings included in the judgment, believed the testimony of the lay witnesses and that part of the expert testimony in harmony with his judgment. This he had a right to do as the trier of facts.

We have carefully considered the voluminous record and exhibits that were admitted in evidence, and have concluded that the trial court had ample evidence on which to base his findings and with which to justify the issuance of the injunction.

Now we must turn to the objections of the appellants, who protest the issuance of the injunction on the grounds, generally, that appellants had every right to do what they were doing in order to protect their crops from hail, and that the facts or credible evidence did not justify the issuance of the injunction. Appellants maintain that appellees have no right to prevent them from flying over appellees' lands; that no one owns the clouds unless it be the State, and that the trial court was without legal right to restrain appellants from pursuing a lawful occupation; also, that the injunction is too broad in its terms.

First of all, it must be noted that, here, we do not have any governmental agency, State or Federal, and find no legislative regulation. This is exclusively a dispute between private interests. It has been said there is no precedent and no legal justification for the trial court's action. It has long been understood that equity was created for the man who had a right without a remedy, and, as later modified, without an adequate remedy. Appellees urge here that the owner of land also owns in connection therewith certain so-called "natural rights", and cites us the following quotation from Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 514, in which Chief Justice Nelson Phillips states:

"Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal. Anything which destroys any of these elements of property, to that extent destroys the property itself. The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right. * * *

* * * * * *

"The very essence of American constitutions is that the material rights of no man shall be subject to the mere will of another. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220."

In Volume 34, Marquette Law Review, at Page 275, this is said:

"Considering the property right of every man to the use and enjoyment of

his land, and considering the profound effect which natural rainfall has upon the realization of this right, it would appear that the benefits of natural rainfall should come within the scope of judicial protection, and a duty should be imposed on adjoining landowners not to interfere therewith."

In the Stanford Law Review, November 1948, Volume 1, in an article entitled, "Who Owns the Clouds?", the following statements occur:

"The landowner does have rights in the water in clouds, however. The basis for these rights is the common-law doctrine of natural rights. Literally, the term 'natural rights' is well chosen; these rights protect the landowner's use of his land in its natural condition. * * *

"All forms of natural precipitation should be elements of the natural condition of the land. Precipitation, like air, oxygen, sunlight, and the soil itself, is an essential to many reasonable uses of the land. The plant and animal-life on the land are both ultimately dependent upon rainfall. To the extent that rain is important to the use of land, the landowner should be entitled to the natural rainfall."

In California Law Review, December 1957, Volume 45, No. 5, in an article, "Weather Modification", are found the following statements:

"What are the rights of the landowner or public body to natural rainfall? It has been suggested that the right to receive rainfall is one of those 'natural rights' which is inherent in the the full use of land from the fact of its natural contact with moisture in the air. * * *

"Any use of such air or space by others which is injurious to his land, or which constitutes an actual interference with his possession or his bene-

ficial use thereof, would be a trespass for which he would have remedy." Hinman v. Pacific Air Transport, 9 Cir., 84 F.2d 755, 758.

Appellees call our attention to various authorities that hold that, although the old ad coelum doctrine has given way to the reality of present-day conditions, an unreasonable and improper use of the air space over the owner's land can constitute a trespass: Guith v. Consumers Power Co., D.C., 36 F.Supp. 21; Restatement of the Law of Torts, paragraph 194 etc.; United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206. Other cases are cited, also, and apparently hold that the land owner, while not owning or controlling the entire air space above his property, is entitled to protection against improper or unreasonable use thereof or entrance thereon.

■ We believe that under our system of government the landowner is entitled to such precipitation as Nature deigns to bestow. We believe that the landowner is entitled, therefore and thereby, to such rainfall as may come from clouds over his own property that Nature, in her caprice, may provide. It follows, therefore, that this enjoyment of or entitlement to the benefits of Nature should be protected by the courts if interfered with improperly and unlawfully. It must be noted that defendant's planes were based at Fort Stockton, in Pecos County, and had to fly many miles to seed clouds over defendants' lands in Jeff Davis County. We do not mean to say or imply at this time or under the conditions present in this particular case that the landowner has a right to prevent or control weather modification over land not his own. We do not pass upon that point here, and we do not intend any implication to that effect.

■■ There is ample evidence here to sustain the fact findings of the trial court that clouds were destroyed over property of appellees by operations of the appellants. The trial court chose to believe the evidence to that effect, and we hold there was ample

evidence to support him in so holding and finding. We further hold that the trial court was justified in restraining appellants from modifying or attempting to modify any clouds or weather over or in the air space over lands of the appellees.

■ However, we do find that the temporary injunction granted by the trial court was too broad in its terms, in that it purports to restrain appellants from any activity with reference to land in the area of "plaintiffs' lands." The trial court's injunction is, therefore, modified so as to restrain appellants from the activities therein described only as they apply to the lands of appellees.

■ Appellants have also urged that the District Court of Jeff Davis County did not have jurisdiction, because the defendant-appellants resided either in Pecos County or Harris County. We overrule this point for the reasons set forth; namely, that appellants were found by the trial court to have been guilty of infringement of appellees' "natural rights" in their lands which are actually a part of their lands. Of course any suit involving damage to land may be brought in the county where the land lies. It will be recalled that Mr. Duncan testified that his land depended upon precipitation to produce the food and forage for his livestock. Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513. However, we do believe that that much of appellants' objections as apply to the lands of appellees about which there has been no testimony is good, and should have been sustained. We make this holding because we do not feel that the court had adequate evidence to prohibit cloud seeding over any lands in the absence of proof that such had been, or would be, done according to the testimony of the witnesses, to the damage of the landowner. Therefore, the injunction is dismissed and dissolved insofar as it applies to any lands in Culberson, Terrell, Winkler and Loving counties, and is further dismissed and dissolved with respect to all plaintiff-appellees excepting Messrs. Ted Gray, Walter McEl-

roy, Jr., Dave Medley, H. C. Patterson, George Asa Jones, Nelson Lethco, Peeler Mathews, and Richard Hoefs.

All other points of appellants are accordingly overruled, and, with the above modification, the judgment of the trial court is affirmed.

ABBOTT, J., not sitting.