## LEISY v. UNITED STATES.

### Civ. No. 970.

United States District Court
D. Minnesota, Fifth Division.

Feb. 26, 1952.

Fred J. Hughes, St. Cloud, Minn., for plaintiff.

C. U. Landrum, U. S. Atty., and William W. Essling, Asst. U. S. Atty., St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff brings this action under the Federal Tort Claims Act[1] to recover damages for the destruction of mink on plaintiff's fur farm on the north shore of Birch Lake, near Hackensack, Minnesota.

Defendant denied liability. The matter was tried and submitted on briefs.

It is undisputed that plaintiff operated a fur farm and owned the mink in question. There is nothing in the evidence contradicting the claim of plaintiff that the mink were destroyed.

The facts disclose that on May 8, 1948, plaintiff and an employee at the farm were working on the roof of one of the farm buildings, when a flight of thirty-nine United States Navy single-engine operational type aircraft approached the farm. The aircraft were enroute from the Naval Air Station at Minneapolis to the airport at Bemidji, Minnesota, in connection with routine training of Navy personnel. Plaintiff testified that upon hearing the noise of the approaching planes he descended from the roof he was working upon and hurried to the mink pen for the purpose of protecting them. The only means of protection was to move among the mink and attempt to keep them from becoming frightened. In the meantime, and before plaintiff reached the pen, the first wave of planes passed overhead. Thereafter, and at two minute intervals, two additional groups of defendant's planes passed above the pens. Plaintiff gave it as his opinion that the planes were at an altitude of about three times the height of the trees on the premises, or about 150 feet above the pens as they went over the fur farm, and that as a result of the noise and vibration and nearby presence of the planes the mink met death. The recently whelped kits were killed by their frightened mothers.

It is undisputed that plaintiff had notified the Civil Aeronautics Authority of the location of his fur farm, but that the United States Navy knew nothing about the matter. It appears that this was the only occasion the defendant's planes had ever flown over plaintiff's property.

Two of the pilots who participated in the questioned flight were called as wit-

1. 28 U.S.C.A. § 921 et seq. [1948 Revised Judicial Code, 28 U.S.C.A. §§ 1346, 2671 et seq.].

nesses for defendant. Neither of these witnesses actually recalled being on the flight. They testified the 1000-foot minimum rule of the Navy was observed at all times as a matter course, and if they did fly below such established minimum they would be subject to disciplinary action. Defendant also introduced in evidence an affidavit of plaintiff's wife.[2]

Plaintiff contends the damage sustained was due to defendant's negligence. Defendant contends it was not negligent. The question of prime importance is one of fact.

■ The court takes judicial notice of the development of air traffic, the problems incidental to its increased volume, and its relation to property generally.[3]

The law of Minnesota makes lawful the flight of aircraft over lands and waters of that state except

"* * * at such low altitude as to interfere with the then existing use to which the land or water, or the space above the land or water, is put by the owner, or unless so conducted as to be imminently dangerous or damaging to persons or property lawfully in the land or water beneath." [4]

Regulation by the Civil Aeronautics Authority prescribes that aircraft flying over uncongested areas be not closer "than 500 feet to any person, vessel, vehicle, or structure." [5]

■ Plaintiff has the burden of proof, and if the proved facts give equal support to each of two inconsistent inferences, judgment must be rendered against the party upon whom rests the burden of sustaining one of such inferences against the other.[6] If the instant case comes within the orbit of that rule, plaintiff must fail. However, the situation here differs from the rule relied on by defendant in the sense that an eye witness testified positively to the negligent low flying of defendant's planes while the opposing evidence is bottomed on the testimony of pilots who at the time had no knowledge of the presence of plaintiff's fur farm as related to the flying course of the accused planes, and who rely upon the claim that they could not have been flying at an altitude below 1000 feet because there was a department rule against it. At common law parties and interested witnesses were incompetent to testify.[7] By statutory law and court rule parties and interested witnesses may testify. Whether or not they are interested goes

2. "Evelyn Leisy, being first duly sworn, on oath deposes and says: That she is the wife of Herbert Leisy and resides with him and their two children at their home on the north shore of Birch Lake, a short distance from Hackensack, in Cass County, Minnesota; that in the morning on May 8, 1948, affiant was in her home doing her usual housework when a number of airplanes flew directly over the house and on over the mink pens which were located directly behind the house, commencing at a distance probably fifty feet from the back door of said house and that said planes were flying so low as to make a terrific din and roar and that said planes were flying so low that the house itself seemed to shake and the furniture and dishes and kitchen utensils actually rattled from the vibration; that a short time thereafter, a second wave of planes flew directly over the house and the mink pens and that substantially the same results occurred; that affiant was unable to understand the cause of this unusual noise and vibration because 'while planes flew over our place on their flights

to and from Bemidji, nothing comparable to this experience had ever taken place in all the years we have lived on Birch Lake'; that a short time thereafter, a third wave of planes flew over and the same vibration and the same terrific noise was experienced. 'This time, I ran out the back door and saw the planes actually flying over us at a height which looked as though they were just skimming the trees in the back yard.' Affiant further states that the mink in the pens had seemingly gone wild and were running around their pens in a wild and crazy fashion."

3. Erickson v. King, 218 Minn. 98, 15 N.W. 2d 201.

4. 22 Minnesota Statutes Annotated, § 360.-012, subd. 3.

5. Title 14, Code of Federal Regulations, 1947 Supp., § 60.107(c), p. 2393.

6. Liggett & Myers Tobacco Co. v. De Parcq, 8 Cir., 66 F.2d 678.

7. Lake Shore Nat. Bank v. Bellanca Aircraft Corporation, D.C., 83 F.Supp. 795.

792

to the weight to be given their testimony. Plaintiff and pilots alike were interested witnesses in the instant case. The weight of the evidence and credibility of witnesses in this type of case is for the trier of the facts.[8] It is significant that no like damage resulted at times when planes in civil service flew over the area involved.

█ In my opinion plaintiff has sustained his burden of proof. The damage met with arose out of defendant's negligence, and defendant should respond in damage in the sum of One Thousand Three Hundred Sixty-six Dollars and Fifty Cents ($1,366.50).

Plaintiff may submit findings of fact, conclusions of law, order for and form of judgment consistent with the foregoing.

Defendant may have an exception.

---

8. Maitland v. Twin City Aviation Corporation, 254 Wis. 541, 37 N.W.2d 74; Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; 38 Minnesota Statutes Annotated, § 595.02.