UNITED STATES of America

v.

4.43 ACRES OF LAND, MORE OR LESS, SITUATE IN TARRANT COUNTY, STATE OF TEXAS, and Virgil S. Holbrook, et al.

UNITED STATES of America

v.

4.24 ACRES OF LAND, MORE OR LESS, SITUATE IN TARRANT COUNTY, STATE OF TEXAS, and G. H. Clanton, et al.

UNITED STATES of America

v.

5.08 ACRES OF LAND, MORE OR LESS, SITUATE IN TARRANT COUNTY, STATE OF TEXAS, and A. B. Cohron, et al.

UNITED STATES of America

v.

11.45 ACRES OF LAND, MORE OR LESS, SITUATE IN TARRANT COUNTY, STATE OF TEXAS, and Lois Mae Behnke, et al.

UNITED STATES of America

v.

24.53 ACRES OF LAND, MORE OR LESS, SITUATE IN TARRANT COUNTY, STATE OF TEXAS, and F. D. Icenhower, et al.

Civ. A. Nos. 3005, 30016, 30017, 3027, 3073.

United States District Court
N. D. Texas, Fort Worth Division.
Jan. 14, 1956.

Heard L. Floore, U. S. Atty., Henry E. Wise, Asst. U. S. Atty., W. B. West, III, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff.

Wingate Lucas, Joe Day, Jr., Harry Harris, Fort Worth, Tex., for defendants E. E. Coleman and others.

Frank B. Potter, Mack Taylor, Fort Worth, Tex., for defendants E. H. Brought and others.

Robert C. Green, Fort Worth, Tex., for defendants Henry L. Holbrook and another.

Wingate Lucas, Joe Day, Jr., Harry Harris, Fort Worth, Tex., for defendants W. E. Barton and others.

Wingate Lucas, Joe Day, Jr., Harry Harris, Fort Worth, Tex., for defendants John E. Burchfield and others.

Frank B. Potter, Mack Taylor, Fort Worth, Tex., for defendants C. E. Carlisle and others.

Dave T. Miller, Fort Worth, Tex., for defendants Peggy R. Grubbs and another.

Wingate Lucas, Joe Day, Jr., Harry Harris, Fort Worth, Tex., for defendants Russell Odom and others.

Frank B. Potter, Mack Taylor, Fort Worth, Tex., for defendants Hillcrest Baptist Church and others.

Robert C. Green, Fort Worth, Tex., for defendants Clyde E. Jones and another.

Frank R. Graves, Fort Worth, Tex., for defendants J. H. Weisenberger and another.

Clyde V. Sweeney, Fort Worth, Tex., for defendant B. Dorsett and another.

Wingate Lucas, Joe Day, Jr., Harry Harris, Fort Worth, Tex., for defendants Charles W. Lovil and others.

Frank B. Potter, Mack Taylor, Fort Worth, Tex., for defendant K. H. Withrow and another.

Charles Lindsey, Fort Worth, Tex., for defendant B. E. Gross and another.

Samuels, Brown, Herman & Scott (Ardell Young), Fort Worth, Tex., for defendant John H. Cook and another.

ESTES, District Judge.

These are condemnation proceedings in which the United States has acquired by right of eminent domain an easement extending outward from the ends of certain airport runways at Carswell Air Force Base and over-lying privately owned property. There are approximately thirteen tracts of land involved in Civil Action No. 3005, twelve tracts in Civil Action No. 3016, thirteen tracts in Civil Action No. 3017, twenty-three tracts in Civil Action No. 3027, and fifteen tracts in Civil Action No. 3073. Because the easement which the Government has condemned is the same in all five proceedings, except for the height of the "glide angle plane" above the ground, which varies from tract to tract, and because the Government has filed identical motions in each case, they may be conveniently disposed of together.

The exact estate which has been condemned is set forth in the Declaration of Taking which has been filed in each case, and consists of the following rights in and to the land in question:

"(1) The continuing perpetual right to cut to ground level and remove trees, bushes, shrubs, or any other perennial growth or underbrush infringing upon or extending into or above the glide angle plane * * *

"(2) The continuing perpetual right to cut to ground level, remove and prohibit the growth of such trees, bushes, shrubs, or any other perennial growth or underbrush which could in the future infringe upon or extend into or above the glide angle plane * * *

"(3) The right to remove, raze, or destroy those portions of buildings, other structures, and land infringing upon or extending into or above the glide angle plane * * *

"(4) The right to prohibit the future construction of buildings or other structures from infringing upon or extending into or above the glide angle plane * * *

"(5) The right of ingress to and egress from and passage on and over said tracts to effect and maintain the necessary clearances.

"Reserving, however, to the land-owners, their heirs, executors, administrators, successors, and assigns, all right, title, interest, and privileges as may be exercised and enjoyed without interference with or abridgment of the easement and right hereby taken for said public uses."

The land subjected to this burden is particularly described in exhibits, which are attached to each Declaration of Taking, as is the "glide angle plane". For the purpose of the motions before the Court, it is sufficient to define the "glide angle plane" as an imaginary plane extending over the described land, much as the ceiling of a room, but sloping upward at the rate of one foot vertically for each fifty feet horizontally as the distance from the airfield runways increases. A careful reading of each Declaration of Taking reveals that such plane has but one function, insofar as these condemnation proceedings are concerned, and that is to serve as the ceiling over the land in question beyond which obstructions or structures may not be allowed to extend upward into the adjacent air space. Its nomenclature is unimportant.

The Government has filed motions asking that each of these proceedings be referred to a commission under Rule 71 A, Federal Rules of Civil Procedure, 28 U.S.C.A. The Government has also filed in each suit a motion asking that the Court, in the event that it does order a reference, instruct its commissioners that just compensation extends only to the estate acquired, as such estate is describ-

ed in the Declaration of Taking on file in each proceeding, and that the commissioners in determining the amount of just compensation may not award the condemnees anything for damages or diminution in value, if any, of their land resulting from the flight of aircraft over such property, for the reason that the Government in these proceedings has not condemned a right to fly aircraft over the land of the condemnees but has acquired simply an easement or right to prevent obstructions or structures on the land from extending into the air space above the "glide angle plane." The condemnees, on the other hand, contend that the Government has already used the air space above their land for aircraft flight, at low altitudes and with great frequency, that the air space is presently being used in such manner, that it will be so used in the future and that this is the purpose of the easement or rights which the Government has condemned in these proceedings. They therefore say that they are entitled to show, and to have the commissioners consider in arriving at the amount of just compensation due in each case, the use which the Government will make of the air space above the "glide angle plane".

We shall consider *first* the question of whether or not these proceedings, or any of them, should be and properly may be referred to a commission under Rule 71A, and *second*, whether or not the instructions to the commissioners, if same are appointed, should exclude from their consideration any damages resulting from the flight of aircraft or other use of the air space above the glide angle plane described in the Declaration of Taking, as requested by the Government in its motions.

Prior to the adoption of Rule 71A, which became effective August 1, 1951, the Federal Rules of Civil Procedure were inapplicable to condemnation proceedings. Such proceedings followed the practice established by the law of the state where the action was brought, under the General Conformity Statute, 40 U.S.C. § 258, 36 Stat. 1167. The issue

of just compensation was normally determined by one of three methods: by commissioners, which was the practice followed in seven states; by commissioners, with a right of appeal to and trial de novo before a jury, which was used in twenty-three states; and by a jury without a commission, which was the method in eighteen states. Rule 71A was adopted to eliminate the confusion in Federal Courts caused by the application of so many different statutes and to create a uniform procedure for all condemnation actions brought under Federal law. A complete history of the rule, including the Advisory Committee's report to the Supreme Court, is set forth in the annotations to Rule 71A in Title 28 U.S.C.A.

Subsection (h) of Rule 71A reads as follows:

"*Trial.* If the action involves the exercise of the power of eminent domain under the law of the United States, any tribunal specially constituted by an Act of Congress governing the case for the trial of the issue of just compensation shall be the tribunal for the determination of that issue; but if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and its findings and report shall have the ef-

fect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53. Trial of all issues shall otherwise be by the court."

There are relatively few reported cases construing Rule 71A(h). Perhaps the first was United States v. Theimer, 10 Cir., 1952, 199 F.2d 501, in which the Court of Appeals set aside the trial Court's order referring the proceedings to a commission. The Theimer case stands for but two propositions: (1) That in making a reference to a commission under Rule 71A(h), the Court must make specific findings of fact sufficient to show that the case in question is a proper one for reference, and (2) that reference to a commission may not properly be ordered for the sole purpose of avoiding delay.

In two subsequent cases the Court of Appeals for the Tenth Circuit had occasion to consider Rule 71A(h) further, and in both instances the action of the trial judge in referring the proceedings to a commission was approved. United States v. Wallace, 10 Cir., 1952, 201 F.2d 65; United States v. Waymire, 10 Cir., 1953, 202 F.2d 550. The Wallace case was said by the Court to be a proper one for reference to a commission because the land being condemned was of a peculiar nature, because its location was inconvenient for local witnesses, and because it would be expensive for a jury to view the land. In the Waymire case reference to a commission was upheld because the land being condemned varied in kind, character and adaptability and included various and varying improvements, some of the land being bottom land, some meadow land, and some pasture or grazing land, and because the situation presented "multiple circumstances calling for the consideration of various elements in arriving at just compensation".

The most recent decision in point, and the only one arising in the Fifth Circuit which has been called to the Court's attention, is United States v. 1,146.32 Acres of Land, D.C.S.D.Tex.1955, 132 F.Supp.

681. Judge Ingraham, in a well-considered opinion, after discussing the Theimer, Wallace and Waymire cases, supra, granted the condemnees' motion asking that the proceedings be referred to a commission for determination of the issue of just compensation because of the exceptional and extraordinary character of the land.

Further discussion of these cases, or a detailed analysis of the particular facts in each, seems unnecessary for they are helpful only in a rather general sense. No two cases are identical, and every tub must stand on its own bottom. They do indicate, however, that reference to a commission has been ordered for a variety of reasons.

Rule 71A(h) does in fact invest the Court with broad discretion in determining whether or not a given condemnation proceeding should be referred to a commission, and the cases above referred to, while clearly holding that the Court's discretion is not an unlimited one, certainly do not impose any very rigid restrictions upon the Court's actions. Nor can there be any doubt that the Supreme Court's Advisory Committee in drafting Rule 71A(h) intended that it should be a practical instrument to aid the Court in the performance of its duties, for the rule is couched in exceedingly general terms. In truth, it would lose much of its utility if such were not the case.

I find that the easement or rights condemned by the Government in each of the condemnation proceedings in question are unusual in character and present exceptional and extraordinary circumstances which could best be considered by a commission. For one thing, the height of the "glide angle plane" above the ground varies from tract to tract because of its inclination. Furthermore, some of the property in question is unimproved and some is highly developed, some is used for residence purposes and some for church purposes, and the proximity to Carswell Air Force Base varies from tract to tract. All of these facts, taken together, create a situation which presents multiple circumstances calling for

the consideration of various elements in arriving at the just compensation to be paid as to each tract. While not a controlling reason, in itself, it appears to the Court that the quantity of tracts and defendants involved in each of these proceedings is a further reason for the appointment of a commission.

 Addressing ourselves to the second problem, to-wit, the instructions to be given such commissioners, I hold that the commissioners, in arriving at the amount of just compensation due in each instance, may not compensate the condemnees for any damages occasioned or likely to be occasioned by the flight of aircraft or other use of the air space above the "glide angle plane" for the reason that the Government has not acquired in these proceedings the right to make such use of the air space above the "glide angle plane". This is because the Government in each of these proceedings has acquired title to the exact easement or estate which is described in the Declaration of Taking, and nothing more. 40 U.S.C.A. § 258a, 46 Stat. 1421; United States v. 29.40 Acres of Land, D.C. N.J.1955, 131 F.Supp. 84. Furthermore, the Court is powerless to change the Declaration of Taking so as to enlarge the easement or rights which the Government has condemned in these proceedings. United States v. 16,572 Acres of Land, D.C.S.D.Tex.1942, 45 F.Supp. 23.

 This is not to say that frequent flights of aircraft over property at low altitudes may not, under certain circumstances, constitute a "taking" of property by the Government for public use, or that it may not cause physical damage, for which the landowner is entitled to just compensation. United States v. Causby, 1946, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206. However, such claims, whether they be expressed in terms of damages or in terms of just compensation for property taken, cannot be heard in these proceedings. They may be asserted in the Court of Claims, as in the Causby case, supra, or in a District Court under the Tucker Act, 28 U.S.C. § 1346(a) (2), 62 Stat. 933, as amended, as in United States v. Cress, 1917, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746, or in a District Court under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 62 Stat. 933, as amended, as in Leisy v. United States, D.C.Minn.1952, 102 F. Supp. 789. But they may not be asserted as a "counter-claim" in a condemnation suit. Oyster Shell Products Corp., Inc., v. United States, 5 Cir., 1952, 197 F.2d 1022, State Road Department of Florida v. United States, 5 Cir., 1948, 166 F.2d 843.

 Furthermore, since the Government has not acquired a right to fly aircraft over the condemnees' land by these proceedings, it follows that, if the Government does cause its aircraft to make flights over the lands of these defendants, or has already done so, at such elevation and with such frequency as to result in a taking beyond that described in the Declaration of Taking on file in these cases, or in actual physical damages, the landowners would have a right to bring suit against the Government for damages or just compensation. United States v. Causby, supra; United States v. Cress, supra; Leisy v. United States, supra, see also Boyd v. United States, 8 Cir., 1955, 222 F.2d 493, 496. Therefore, if the commissioners are allowed in determining the amount of just compensation to take into consideration past or probable future aircraft flights over the lands of these condemnees, and in effect to compensate the condemnees therefor, the Government will be required to pay for something which it has not acquired, in these proceedings at least, and for which it may be compelled to pay damages or just compensation in subsequent proceedings.

 The motions of the Government for reference to commissioners under Rule 71A(h), Federal Rules of Civil Procedure are well taken, and such commissioners will be instructed to determine the amount of just compensation due in each instance as payment by the Government for the exact estate or easement which it has condemned, as described in the Declaration of Taking in

each case, and they will be instructed further that they may not consider as an element of just compensation in any of these cases any damages occasioned or likely to be occasioned by the flight of aircraft or other use of the air space above the glide angle plane.