INDIANA TOLL ROAD COMMISSION *v.* JANKOVICH ET AL.

[No. 30,109. Filed October 24, 1963. Rehearing denied
December 17, 1963.]

*Robert L. McMahan,* of South Bend, *Winfield L. Houran, Chester, Clifford, Hoepper & Houran,* of counsel, of Valparaiso, *Paul J. DeVault* and *Kreig, DeVault, Alexander & Capehart,* of counsel, of Indianapolis, for appellant.

*Straley Thorpe,* of Hammond, for appellees.

ACHOR, J.—This is an action for damages alleged to have been sustained by appellees as a result of the construction by appellant of the Indiana East-West Toll Road in violation of a Master Airport Zoning Ordinance of the City of Gary, and the contract rights of appellees as lessees of a portion of the Gary Municipal Airport. The appellees also sought to enjoin and restrain appellant from maintaining the toll road at its present elevation.

The circumstances giving rise to this litigation are as follows: The City of Gary enacted an ordinance in September, 1949, creating an airport commission. The ordinance further purported to incorporate, as a part thereof, the Gary Airport Zoning Map which defined

and described details of construction and the boundaries of said airport. The airport so described encompassed an area of approximately one square mile. It was located in an area bounded generally by industrial plants on the north, and on the south by the Grand Calumet River, beyond which were the Lake Shore Railroad, the utility lines of the Northern Indiana Public Service Company, and a residential area.

The ordinance was enacted pursuant to the authority as authorized by Acts 1945, ch. 190, §9, p. 591; 1949, ch. 109, §6, p. 252 [being §14-422, Burns' 1950 Repl.]. The provision therein which is directly related to this litigation, presumed to invest the City of Gary with jurisdiction over structures for six miles in all directions radiating from said airport, and to provide that no structure should be erected within the inner area approach zone to any proposed runway for a distance extending 6,000 feet from the end of the proposed runway to any height which would interfere with the glide angle therefrom of 40 feet horizontally to each one foot of vertical height. The ordinance further provided for the granting of non-conforming uses and variances, upon showing of good and sufficient reasons, before the Board of Zoning Appeals in the City of Gary under its rules and regulations.

Pursuant to said ordinance and in conformity with the details of construction described in said Gary Airport Zoning Map, three runways were constructed, except that approximately 300 feet was omitted from the south end of the north and south runway, which runway is involved in this action.

On or about March 23, 1950, appellees entered into a 20 year lease for the operation of said airport. Pursuant to said lease, appellees expended approximately $400,000 in the building of hangars, the purchase of

equipment and facilities for the operation of the general business of said airport.

Thereafter the appellant located and constructed its toll road, parallel with the south side of the Gary Municipal Airport in such a manner as to cross the inner area approach zone of the north-south runway as prescribed by the ordinance, the road being approximately 743 feet south of the south end of said proposed runway, and approximately 25 feet higher than the elevation of the end of said proposed runway.

Under the ordinance the permitted elevation of structures at the location of the toll road was approximately 18 1/2 feet, the toll road thus projecting itself into the prohibited area about 6 1/2 feet. It is this encroachment by appellants upon the approach zones to the airport, as fixed by the ordinance, that appellees based their action for damages.

Three basic issues are raised by appellants to appellees' right to recover damages by reason of appellant's noncompliance with the ordinance: (1) Does the ordinance rest upon any valid legislative authority; (2) does the ordinance purport to effect a taking of private property for public use in violation of the provisions of Article 1, §21 of the Indiana Constitution and the Fourteenth Amendment to the Constitution of the United States; and (3) if the ordinance does not effect an unconstitutional taking of private property for public use, but merely operates as a limitation upon the use of private property by a municipality, within the valid exercise of the police power, may that limitation of use be divested without compensation by an agency of the state which is subsequently granted authority to occupy land and air space upon which there had previously been placed a limitation as to its use?

Because of the decision which we have reached in this case, it it is necessary that we consider only appellant's second contention, namely, that the provisions of the ordinance relied upon by appellees were unconstitutional in that it purported to appropriate, without compensation, the reasonable and ordinary use of the property on which appellant constructed its toll road.

This reason for the invalidity of the ordinance was urged by appellant in its objection to the admissibility of the ordinance and the maps or plans offered by appellees as a part thereof. The same issue was asserted as grounds for a motion for a finding for the defendant filed at the conclusion of the plaintiffs' evidence and after plaintiffs had rested their case, which motion was overruled.

The fact that private property may not be taken for public use without compensation is not debatable.[1] However, in determining whether this constitutional protection has been violated by the ordinance under consideration, two main issues arise: (1) Whether air space above land is a constitutionally protected property right, and (2) whether in the instant case there has been a constitutionally proscribed taking.

---

1. "No man's particular services shall be demanded, without just compensation. No man's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." Article 1, §21 Indiana Constitution.

"No state shall make or enforce any law which shall abridge the privileges of immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." 14th Amend. Constitution of the United States. *Pennsylvania Coal Co.* v. *Mahon* (1922), 260 U. S. 393, 67 L. Ed. 322, 43 S. Ct. 158; *General Outdoor Advertising Co.* v. *City of Indianapolis* (1930), 202 Ind. 85, 172 N. E. 309.

With respect to the first issue, the law has been made clear by both legislative and judicial declaration that a landowner is also the owner of the air ■ space above his property, at least to the extent that such air space may reasonably be used by him. The Indiana Legislature has provided that:

"The ownership of the space above the lands and waters of this state is declared to be vested in the several owners of the surface beneath, . . . " Acts 1927, ch. 43, §3, p. 119 [being §14-103, Burns 1950 Repl.].

Also, the property right of a landowner in the air space above his property was recognized in numerous decisions of this court and the federal courts. In *Capitol Airways, Inc.* v. *Indianapolis P. & L. Co.* (1938), 215 Ind. 462, 466, 18 N. E. 2d 776, 778, suit had been brought by an airport operator, who admittedly had no right to take property by eminent domain against a public utility, for damages and an injunction. The wrongful act complained of was the erection of a power line by the public utility which, it was claimed, obstructed the flight of airplanes into and out of the airport. This court affirmed the sustaining of a demurrer to the complaint and stated:

"The establishment of an airport upon the appellant's land in no way affected or limited the right of adjacent landowners to use their land in any manner and for any purpose for which they might have used it before. Had the appellee chosen to erect flagpoles, factory chimneys, or tall buildings across the whole of its land, and several times as high as its power line, it was within its rights notwithstanding it might have entirely prevented the landing of airplanes at appellant's airport. . . ."

The Supreme Court of the United States also has given recognition to property rights in air space ac-

cruing to the owner of the land beneath. In *U. S.* v. *Causby* (1946), 328 U. S. 256, 264, 90 L. Ed. 1206, 66 S. Ct. 1062, the problem presented was whether property was taken, within the meaning of the Fifth Amendment to the Constitution of the United States, by frequent and regular flights of military aircraft over the claimaint's land at low altitudes. The court held there had been a taking of an easement over the property for which compensation had to be paid and stated:

> "The landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land. . . . The fact that he does not occupy it in a physical sense — by the erection of buildings and the like — is not material."

For an excellent analysis of the problem, see *Ackerman* v. *Port of Seattle*; amended opinion at 55 Wash. 2d 400, 348 P. 2d 664 (1960), unamended opinion at 329 P. 2d 210 (1958).

The *Causby* case, *supra*, was reaffirmed by the Supreme Court of the United States on March 5, 1962, in *Griggs* v. *Allegheny County*, 369 U. S. 84, 7 L. Ed. 2d 585, 589, 82 S. Ct. 531, reh. den. 369 U. S. 857, 8 L. Ed. 2d 16, 82 S. Ct. 931, involving frequent low landings and take-offs over the residence of the petitioner. The Supreme Court held that there had been a taking of property in violation of the Fourteenth Amendment. The reasoning of the court was expressed as follows:

> "A county that designed and constructed a bridge would not have a usable facility unless it had at least an easement over the land necessary for the approaches to the bridge. Why should one who designs, constructs, and uses an airport be in a more favorable position so far as the Fourteenth Amend-

ment is concerned? That the instant 'taking' was 'for public use' is not debatable. For respondent agreed with the C. A. A. that it would operate the airport 'for the use and benefit of the public,' that it would operate it 'on fair and reasonable terms and without unjust discrimination,' and that it would not allow any carrier to acquire 'any exclusive right' to its use.

"The glide path for the northeast runway is as necessary for the operation of the airport as is a surface right of way is (sic) for operation of a bridge, or as is the land necessary for the operation of a dam. See United States v. Virginia Electric & Power Co. 365 U. S. 624, 630, 5 L. Ed. 2d 838, 845, 81 S. Ct. 784. As stated by the Supreme Court of Washington in Ackerman v. Seattle, 55 Wash. 2d 401, 413, 348 P. 2d 664, 671, 77 A. L. R. 2d 1344, ' . . . an adequate approach way is as necessary a part of an airport as is the ground on which the airport itself is constructed. . . . ' Without the 'approach areas,' an airport is indeed not operable. Respondent in designing it had to acquire some private property. Our conclusion is that by constitutional standards it did not acquire enough."

In the light of the above authorities we conclude that the reasonable and ordinary use of air space above land is a property right which cannot be taken without the payment of compensation.

The next problem is whether an unconstitutional taking has resulted in the instant case. In considering this point the distinction must be made between zoning regulations which merely restrict the enjoyment and use of property through a lawful exercise of the police power, and a taking of property for a public use, for which compensation must be paid. In the former instance, where the owner of property is merely restricted in the use and enjoyment of his property, he is not entitled to compensation. A common example of such an authorized restriction is the im-

position on property of building set-back lines. *Gorieb* v. *Fox* (1927), 274 U. S. 603, 71 L. Ed. 1228, 47 S. Ct. 675; *Bd. of Zoning Ap. of Decatur* v. *Jehovah's Witnesses* (1954), 233 Ind. 83, 117 N. E. 2d 115; *Goldsmith* v. *City of Indianapolis* (1935), 208 Ind. 465, 196 N. E. 525.

However, mere regulation under the police power which can be modified at the discretion of regulating authority is wholly different from the taking or appropriating of private property by the government for a specific public use. The latter can be effected only if compensation is provided. *Pennsylvania Coal Co.* v. *Mahon* (1922), 260 U. S. 393, 67 L. Ed. 322, 43 S. Ct. 158; 1 Metzenbaum, Law of Zoning 70-76 (2d ed. 1955). *Griggs* v. *Allegheny, supra.*

With this distinction established, it becomes apparent that the City of Gary has attempted, by the passage of the ordinance under consideration, to take and appropriate to its own use the ordinarily usable air space of property adjacent to the Gary Airport without the payment of compensation.

True, the ordinance provided that an aggrieved landowner might apply for a variance, but there is no provision for compensation in event recourse to such procedure is unsuccessful. In any event, a variance need not be sought under the rule requiring exhaustion of administrative remedies when a zoning ordinance is invalid as an entirety. *Village of Euclid* v. *Ambler* (1926), 272 U. S. 365, 71 L. Ed. 303, 47 S. Ct. 114; 1 Metzenbaum, op. cit. *supra* at 708. An unconstitutional law cannot be made constitutional by merely providing a procedure which gives a complaining party the right of judicial review. *Finney* v. *Johnson* (1962), 242 Ind. 465, 179 N. E. 2d 718.

Our attention has been called to the fact that the preamble of the ordinance shows that its purpose is to exercise the right of eminent domain under the guise of the police power.[2] However, as has been stated:

"The courts are not bound by mere forms, nor are they to be misled by mere pretences. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, . . . is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Mugler* v. *Kansas* (1887), 123 U. S. 623, 661, 31 L. Ed. 205, 8 S. Ct. 273; see also 1 Metzenbaum, *op. cit. supra* at 77-79.

The issue before us was considered by the Supreme Court of New Jersey in the case of *Yara Engineering Corp.* v. *Newark* (1945), 132 N. J. L. 370, 373, 40 A. 2d 559, 561. The City of Newark had adopted an airport zoning ordinance creating airport approaches and turning zones in the vicinity of the Newark Municipal Airport and regulating and restricting the height of structures in these zones. A proceeding was brought to set aside the ordinance. In holding the ordinance unconstitutional, the Supreme Court of New Jersey stated:

"We conclude that this ordinance . . . is in fact the taking of private property without due process of law, in violation of the Fourteenth Amendment of the United States Constitution, and also the taking for public use without just compensation, in vio-

---

2. "WHEREAS, it is necessary in the interest of the public health, public safety, and general welfare, that creation or establishment of airport hazards be prevented to the extent legally possible by exercise of the police power, . . ."Gary Ordinance No. 2897 [dated Sept. 19, 1949].

lation of Article 1, paragraph 16 of the State Constitution.

"The City may not under the guise of an ordinance acquire rights in private property which it may only acquire by purchase or by the exercise of its power of eminent domain. . . . " See also cases cited at Anno. 77 A. L. R. 2d 1362.

The federal government has recognized the requirement that easements for the glide angle needed for landing and take-off must be acquired by condemnation proceedings and payment of just compensation. This is shown by the condemnation proceedings in *United States* v. *48.10 Acres of Land* (S.D. N.Y. 1956), 144 F. Supp. 258, and *United States* v. *4.43 Acres of Land* (N. D. Tex. 1956), 137 F. Supp. 567, for air easements over property adjoining federal bases.

On the basis of the above authorities, we conclude that the ordinance purported to authorize an unlawful and unconstitutional appropriation of property rights without payment of compensation.

Appellee finally asserts that even though the ordinance unlawfully may have effected a taking of the land subsequently acquired by the toll road without compensation, it was the duty of "any immediate property owner" to protect himself by inverse condemnation proceedings under authority provided in the Eminent Domain Statute, citing §§3-1706—3-1711, Burns' 1946 Repl., and that they having failed to do so, their rights must be considered waived.

Appellees' position is not tenable for two reasons: The statute providing for inverse condemnation proceedings presumes (1) that the taking was an accomplished fact, and (2) that it took place under some constitutional authority, with respect

to which, however, the prescribed procedure had not been followed. In this case there had not been any actual encroachment upon or taking of the air space over the land in question within the area specified by the ordinance. This was impossible, because the power lines which are adjacent to, and parallel with it, are much higher than the toll road complained of. Furthermore, as heretofore discussed, the ordinance, upon which appellees' alleged property right is based, was wholly void insofar as it purported to authorize the taking of private property without compensation therefor. Under these circumstances, as conceded by appellees in their brief, "If it [the ordinance] is wholly void then of course no rights are created thereby and it can be the basis for nothing and may be collaterally attacked."

Judgment is reversed and the trial court is directed to sustain appellant's motion for a finding for defendant [appellant], which motion was filed at the conclusion of appellees' evidence.

Myers, C. J., Arterburn & Landis, JJ., concur.

Jackson, J., dissents [without opinion].

NOTE.—Reported in 193 N. E. 2d 237.