JANKOVICH ET AL., DOING BUSINESS AS CALUMET
AVIATION CO. *v.* INDIANA TOLL ROAD
COMMISSION.

No. 60. Argued December 10, 1964.—Decided January 18, 1965.

*Bernard Dunau* argued the cause for petitioners. With
him on the briefs were *Straley Thorpe, Robert C. Lester*
and *Rita C. Davidson.*

*Hugh B. Cox* argued the cause for respondent. With
him on the brief were *Charles A. Miller, Paul J. DeVault*
and *Philip E. Byron, Jr.*

Briefs of *amici curiae,* urging reversal, were filed by
*Solicitor General Cox* and *Roger P. Marquis* for the

United States; by *Edwin K. Steers*, Attorney General of Indiana, *Harold L. Folley*, Deputy Attorney General, and *John J. Dillon* for the Aeronautics Commission of Indiana et al.; by *Roger Arnebergh, Alexander G. Brown, J. Elliott Drinard, Sidney Goldstein, Daniel B. Goldberg, Henry P. Kucera, John C. Melaniphy, Robert E. Michalski, Thomas J. Neenan, John W. Sholenberger, Barnett I. Shur, Fred G. Stickel III, Charles S. Rhyne, Brice W. Rhyne* and *Alfred J. Tighe, Jr.*, for the National Institute of Municipal Law Officers; and by *John E. Stephen* and *George S. Laphan, Jr.*, for the Air Transport Association.

MR. JUSTICE WHITE delivered the opinion of the Court.

Pursuant to a 20-year lease with the City of Gary, Indiana, petitioners are the operators of Gary Municipal Airport, one of the airports included in the National Airport Plan. They seek review of a decision invalidating the city's airport zoning ordinance, which, with regard to buildings and other structures in the immediate vicinity of the airport, prescribes height limitations based upon a 40-to-1 glide angle for approaching aircraft (*i. e.*, at a distance of 40 feet from the end of the planned runway, structures may not exceed one foot in height). After passage of the ordinance, respondent, the Indiana Toll Road Commission, constructed a toll road parallel to the south side of the airport and 443 feet from the end of the planned runway. Contending that at that location the ordinance prescribes a maximum height of 18.08 feet above the surrounding land and that respondent's toll road (which is raised 29.8 feet above the surrounding land surface) violates the ordinance, petitioners brought suit in the Indiana courts for injunctive relief and damages. Although it refused to grant an injunction, the trial court awarded petitioners damages of $164,000 and costs. That judgment was reversed by the Supreme Court of

Indiana, which concluded that "the ordinance purported to authorize an unlawful and unconstitutional appropriation of property rights without payment of compensation." 244 Ind. 574, 584; 193 N. E. 2d 237, 242. Because it appeared that the case involved the validity of airport zoning regulations under the Fourteenth Amendment of the Constitution of the United States and therefore presented important questions affecting the National Airport Plan not previously considered by this Court, we granted certiorari. 377 U. S. 942.

Respondent suggests, however, that we are without jurisdiction to review the judgment of the Supreme Court of Indiana because that judgment was based on an independent and adequate state ground. It is undoubtedly

> " 'the settled rule that where the judgment of a state court rests upon two grounds, one of which is federal and the other non-federal in character, our jurisdiction fails if the non-federal ground is independent of the federal ground and adequate to support the judgment.' *Fox Film Corp.* v. *Muller,* 296 U. S. 207, 210." *Cramp* v. *Board of Public Instruction,* 368 U. S. 278, 281.

As we have concluded that respondent is correct in its contention that the judgment sought to be reviewed is supported by an independent and adequate state ground, we dismiss the writ of certiorari as improvidently granted.

In the Indiana Supreme Court respondent relied on the just compensation requirement of the Indiana Constitution as well as on the Due Process Clause of the Fourteenth Amendment. The Indiana Supreme Court stated the issue for decision as whether "the ordinance purport[s] to effect a taking of private property for public use in violation of the provisions of Article 1, § 21 of

the Indiana Constitution [1] and the Fourteenth Amendment to the Constitution of the United States." 244 Ind., at 577, 193 N. E. 2d, at 238. In resolving that issue, however, the Indiana Supreme Court, quite understandably, did not analyze separately the effect of the two provisions but considered them together. From that fact petitioners would have us conclude that the state ground of decision—invalidity of the zoning ordinance under Art. 1, § 21, of the Indiana Constitution—"is so interwoven with the other as not to be an *independent matter . . . .*" *Enterprise Irrig. District* v: *Canal Co.,* 243 U. S. 157, 164 (dictum). (Emphasis added.) We cannot agree.

Quoting both Art. 1, § 21, of the Indiana Constitution and § 1 of the Fourteenth Amendment and citing both a decision of this Court, *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, and one of its own decisions, *General Outdoor Advertising Co.* v. *City of Indianapolis,* 202 Ind. 85, 172 N. E. 309 (1930), the Indiana Supreme Court began its analysis with the proposition that private property may not be taken for public use without compensation. Two issues were singled out as determinative of whether the ordinance under consideration violated that constitutional protection: "(1) Whether air space above land is a constitutionally protected property right, and (2) whether in the instant case there has been a constitutionally proscribed taking." 244 Ind., at 578, 193 N. E. 2d, at 239.

In holding that landowners did have a protected property interest in the airspace above their land, the court first discussed an Indiana statute, Acts 1927, c. 43, § 3,

---

[1] Art. 1, § 21, Ind. Const.:

"No man's particular services shall be demanded, without just compensation. No man's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered."

Burns Ind. Stat. Ann. § 14–103 (1950 Repl.) ("The ownership of the space above the lands and waters of this state is declared to be vested in the several owners of the surface beneath, . . ."), and a prior interpretation of state law, *Capitol Airways, Inc.* v. *Indianapolis P. & L. Co.*, 215 Ind. 462, 466, 18 N. E. 2d 776, 778 (1939) (airport operator has no right to damages from public utility whose power line obstructs flight into and out of airport). In addition, the Indiana Supreme Court cited and discussed two cases of this Court holding low altitude overflights to constitute a taking of an air easement requiring just compensation under the United States Constitution. *Griggs* v. *Allegheny County*, 369 U. S. 84; *United States* v. *Causby*, 328 U. S. 256. But nothing in the court's opinion suggests that its conclusion that "[i]n the light of the above authorities . . . the reasonable and ordinary use of air space above land is a property right which cannot be taken without the payment of compensation," 244 Ind., at 581, 193 N. E. 2d, at 240, flows from a federal rather than a state source. Indeed, the organization and language of the opinion indicates that, at the least, state law is an equal ground of decision.

The discussion of the second question—whether the ordinance effects a proscribed taking, as opposed to a reasonable regulation under the police power—similarly interlaces Indiana and federal decisions, as well as decisions of other state courts. Again there is no intimation that the conclusion that the ordinance entails "an unlawful and unconstitutional appropriation of property rights without payment of compensation," 244 Ind., at 584, 193 N. E. 2d, at 242, is based less forcefully on the Indiana Constitution than on the Fourteenth Amendment.

In such circumstances, even though a state court's opinion relies on similar provisions in both the State and Federal Constitutions, the state constitutional provision has been held to provide an independent and adequate

ground of decision depriving this Court of jurisdiction to review the state judgment. *New York City* v. *Central Savings Bank,* 306 U. S. 661, explained in *Minnesota* v. *National Tea Co.,* 309 U. S. 551, 556–557; *Lynch* v. *New York ex rel. Pierson,* 293 U. S. 52. This is not a case like those cited by petitioners where the lower court opinion as a whole "leaves the impression that the court probably felt constrained to rule as it did because of [decisions applying the Fourteenth Amendment]," *Minnesota* v. *National Tea Co., supra,* at 554–555, or "because it felt under compulsion of federal law as enunciated by this Court so to hold," *Missouri ex rel. Southern R. Co.* v. *Mayfield,* 340 U. S. 1, 5, with the result that the state and federal grounds are "so interwoven that we are unable to conclude that the judgment rests upon an independent interpretation of the state law," *State Tax Comm'n* v. *Van Cott,* 306 U. S. 511, 514. See also *Perkins* v. *Benguet Mining Co.,* 342 U. S. 437, 443, 448–449; *Enterprise Irrig. District* v. *Canal Co., supra.* Under our settled decisions the state ground in this case must be regarded as an independent and adequate ground of decision, and we so hold.

Petitioners nevertheless contend that the state ground of decision is not *adequate* because it is inconsistent with the policy of the Federal Airport Act, 60 Stat. 170, as amended, 49 U. S. C. § 1101 *et seq.* (1958 ed. and Supp. V), and therefore founders on the Supremacy Clause.[2]

---

[2] Petitioners' pre-emption argument is not pressed in their petition for certiorari as a separate issue for review but only as bearing on the adequacy of the state ground of decision. Nor have petitioners demonstrated that this issue was presented to the Indiana Supreme Court. In this regard petitioners quote that court's statement that "[t]he federal government has recognized the requirement that easements for the glide angle needed for landing and take-off must be acquired by condemnation proceedings and payment of just compensation," 244 Ind., at 584, 193 N. E. 2d, at 242, but that conclusion

The premises underlying petitioners' argument are that the Federal Airport Act is predicated on a determination by Congress that airport zoning is essential to assure compatible land use in the vicinity of airports without prohibitive cost and that the decision of the Indiana Supreme Court in this case signifies the total nullification of airport zoning. We think the second premise is unfounded. The Indiana Supreme Court had before it a case in which the effect of the ordinance was to establish a maximum height of 18 feet for structures on respondent's land. Although it recognized that zoning regulations may be upheld as a reasonable exercise of the police power "where the owner of property is merely restricted in the use and enjoyment of his property," 244 Ind., at 581, 193 N. E. 2d, at 240–241, the court held that a taking requiring compensation—rather than mere regulation—was effected here because "the City of Gary has attempted, by the passage of the ordinance under consideration, to take and appropriate to its own use *the ordinarily usable* air space of property adjacent to the Gary Airport . . . ." 244 Ind., at 582, 193 N. E. 2d, at 241. (Emphasis added.) As we read the opinion of the Indiana Supreme Court, it certainly does not portend the wholesale invalidation of all airport zoning laws.

was based on two cases condemning easements over property adjoining federal bases that were decided several years before the recent amendment to the Federal Airport Act, *United States* v. *48.10 Acres of Land,* 144 F. Supp. 258 (D. C. S. D. N. Y. 1956); *United States* v. *4.43 Acres of Land,* 137 F. Supp. 567 (D. C. N. D. Tex. 1956), not on any assessment of the policy of that Act. These circumstances of course bar petitioners from seeking reversal of the judgment below on the basis of their pre-emption claim, and it is therefore questionable whether petitioners may advance the same argument under the guise of an attack on the adequacy of the state ground of decision. We need not consider this problem further, however, because, as is explained in the text, *infra,* the pre-emption claim is insubstantial.

And no substantial claim can be made that Congress intended to preclude such an application of state law as is involved in the present case. On March 11 of last year Congress did indicate its interest in furthering airport zoning when it amended § 11 of the Federal Airport Act to require as an additional condition of approval of an airport project seeking federal aid that:

> "(4) appropriate action, *including the adoption of zoning laws,* has been or will be taken, to the extent reasonable, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations including landing and take-off of aircraft." P. L. 88–280, 1964 U. S. Code Cong. & Adm. News 514. (Emphasis added.)

That requirement, however, is presently implemented by the Federal Aviation Agency by obtaining an assurance from the project sponsor that he will prevent the construction of obstructions to air navigation "either by the acquisition and retention of easements or other interests in or rights for the use of land or airspace or by the adoption and enforcement of zoning regulations." Form FAA–1624, Part III 7, Sponsor Assurances. And amounts expended to acquire "land or interests therein or easements through or other interests in air space" are among "the allowable project costs" that may be recompensed under § 13 of the Federal Airport Act, 60 Stat. 177, as amended, 49 U. S. C. § 1112 (a)(2) (1958 ed., Supp. V). Appearing as *amicus curiae,* the United States affirms that "[t]here is no basis for a contention that federal law removes State law restrictions on the exercise of the zoning power or defeats any State law right to compensation." We conclude that the decision of the Supreme

Court of Indiana in this case is compatible with the congressional policy embodied in the Federal Airport Act.[3]

The writ of certiorari is dismissed as improvidently granted.

*It is so ordered.*

MR. JUSTICE STEWART, with whom MR. JUSTICE BLACK joins, dissenting.

Although the opinion of the Supreme Court of Indiana relies on state and federal precedents, I can find nowhere in its opinion any clear indication of whether that court's ultimate conclusion is based upon the Federal Constitution, the Constitution of Indiana, or both. Therefore, I think the posture of this case is identical to that presented in *Minnesota* v. *National Tea Co.*, 309 U. S. 551, and that we should, as the Court did there, vacate the judgment of the State Supreme Court and remand the cause for further proceedings.

"It is important that this Court not indulge in needless dissertations on constitutional law. It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions. But it is equally important that ambiguous or obscure adjudications by state courts do not stand as barriers to a determination by this Court of the validity under the federal constitution of state action. Intelligent exercise of our appellate powers compels us to ask for the elimination of the obscurities and ambiguities from the opinions in such cases. Only then can we ascertain whether or not our jurisdiction to review should be invoked. Only by that procedure can the responsibility for striking down or upholding state legislation be fairly placed. For no other course

---

[3] Needless to say, we express no opinion in this case regarding the validity under the United States Constitution of the city's airport zoning ordinance.

assures that important federal issues, such as have been argued here, will reach this Court for adjudication; that state courts will not be the final arbiters of important issues under the federal constitution; and that we will not encroach on the constitutional jurisdiction of the states. This is not a mere technical rule nor a rule for our convenience. It touches the division of authority between state courts and this Court and is of equal importance to each. Only by such explicitness can the highest courts of the states and this Court keep within the bounds of their respective jurisdictions." 309 U. S., at 557.