# MINNEAPOLIS-ST. PAUL METROPOLITAN AIRPORTS COMMISSION v. LAWRENCE E. McCABE, COMMISSIONER OF AERONAUTICS. CITY OF ST. PAUL AND OTHERS, INTERVENORS.

135 N. W. (2d) 48.

April 9, 1965—No. 39,815.

*Gordon Rosenmeier,* for appellant.

*Robert Mattson,* Attorney General, and *C. Blaine Harstad,* Special Assistant Attorney General, for respondent.

*Donald L. Lais* and *Frederick P. Memmer,* for intervenors Village of Maplewood and Midwest Radio-Television, Inc.

22

SHERAN, JUSTICE.

Appeal from an order of the district court denying the motion of plaintiff for amended findings of fact and conclusions of law or, in the alternative, for a new trial.

Action was instituted by the Minneapolis-St. Paul Metropolitan Airports Commission (hereinafter called M.A.C.) against Lawrence E. McCabe as Commissioner of Aeronautics of the State of Minnesota (hereinafter called commissioner) seeking a declaratory judgment construing Minn. St. 360.063, subd. 1, as requiring the commissioner to consider and either approve or specify objections to certain zoning regulations proposed by and submitted to him by M.A.C.

### The Pleadings

The complaint alleges: M.A.C. is a public corporation. Acting pursuant to L. 1943, c. 500, as amended, (Minn. St. 360.101 to 360.144) and L. 1945, c. 303, as amended, (Minn. St. 360.061 to 360.074) it has caused zoning regulations to be drafted. These proposed regulations have been submitted to the defendant as required by law, but he has failed either to approve or state his objections to them. This refusal by defendant prevents plaintiff from proceeding with zoning regulations necessary in the interest of the public health, public safety, and general welfare. The commissioner's sole ground for refusal to consider the proposed regulations is that there is an ambiguity in the governing statute, viz., Minn. St. 360.063, subd. 1, which makes it uncertain whether plaintiff has authority and responsibility under the law to promulgate zoning regulations for the entire area within its territorial jurisdiction.

By answer the commissioner admitted the allegations of the complaint except he alleges specifically: "Plaintiff's zoning authority is limited to the area within two miles of an airport boundary as described in Minn. Stat. 360.063, Subd. 1, paragraph 2."

Intervenors appearing in this court were the city of St. Paul and the village of Maplewood, municipal corporations located within the territorial limits of M.A.C., who also contend that the zoning authority of M.A.C. is limited to the area specified in § 360.063, subd. 1(2). Appearance is also made in this court on behalf of Midwest Radio-

Television, Inc., which, as an owner of an interest in real estate which may be affected by the ordinance proposed by M.A.C., disputes the claims of authority as set out in the M.A.C. complaint. Other intervenors who appeared in the district court but who did not enter an appearance upon this appeal were the village of Shoreview, the village of Mounds View, the village of North St. Paul, the town of White Bear, and the city of White Bear Lake, all of whom opposed the requested declaratory relief.

Trial Court Determination

The matter came on for trial before the District Court of Ramsey County without a jury on November 2, 1964. The following findings of fact and conclusions of law were entered:

"That plaintiff at all times herein mentioned was and still is a public corporation organized and existing pursuant to the Statutes of Minnesota, and having the powers conferred upon it by the statute creating it, and that the defendant is and was at all times herein mentioned duly qualified and acting commissioner of aeronautics of the State of Minnesota.

"That heretofore the plaintiff caused to be drafted certain zoning regulations, and duly submitted the same to the defendant for his approval in the manner provided by law. That said zoning regulation, or ordinance, purports and attempts to rezone land and regulate its use for a distance of approximately 25 miles from the court houses located in St. Paul and Minneapolis. That the defendant has refused to take any action upon the proposed ordinance for the reason that he claims it exceeds the power granted to plaintiff by the statute.

"The intervenors claim that, in addition to the objections made to the ordinance by the defendant, the proposed ordinance is invalid, upon the grounds generally that the statute under which both parties to the action claim to proceed is invalid, insofar as it attempts to delegate to plaintiff any power to zone real estate and restrict its use within the limits of municipal governments, which have the power of zoning, which was conferred upon them by the legislature prior to the enactment of the statute under which plaintiff claims the right to proceed.

and intervenors further claim that, in any event, the proposed ordinance is so unreasonable that it would be invalid, if passed.

"CONCLUSIONS OF LAW

"Plaintiff and defendant are entitled to the declaratory judgment of this Court holding and declaring the Statutes of Minnesota, collected and codified as Chapter 360, M. S., confer upon the plaintiff the power to regulate the location, size and use of buildings and the density of population in that portion of an airport hazard area under approach zones for a distance not to exceed two miles from the airport boundary, and in other portions of an airport hazard area for a distance not to exceed one mile from the airport boundary, and no further zoning power. That such power may be exercised by plaintiff in the form of an ordinance, the proposed ordinance, before any hearing is held thereon, to be first submitted to the defendant, in order that he may determine whether it conforms to the minimum standards prescribed by him, and that if any objections are made by him on the ground that such regulations do not conform to the minimum standard prescribed by him, that plaintiff must make such amendments as are necessary to meet such objections.

"That the statute, as so construed, does not violate any of the provisions of the Constitution.

"That the defendant was justified in his refusal to consider the proposed ordinance.

"The court expressly refrains from making any determination or declaration as to the validity and reasonableness of the proposed ordinance, because there is at this time no justiciable issue relating thereto.

"That if and when an ordinance is adopted by the plaintiff in the manner prescribed by law that the portion of the statute commonly called the 'tall structure act'[1] remains in full force and effect, except to the extent that its provision may be modified by the valid provisions of such zoning ordinance."

---

[1]Minn. St. 360.81 to 360.91 give the commissioner of aeronautics authority to require permits as a condition precedent to erection of certain structures over 500 feet in height.

## The Relevant Statutes

M.A.C. was established by the legislature in 1943 (L. 1943, c. 500; Minn. St. 360.101 to 360.123). The declared purpose of the legislation is stated to be:

"It is the purpose of this act to promote the public welfare and national security; serve public interest, convenience, and necessity; promote air navigation and transportation, international, national, and local, in and through this state; increase air commerce and promote the efficient, safe, and economical handling of such commerce; assure the inclusion of this state in national and international programs of air transportation; and to those ends *to develop the full potentialities of the metropolitan areas in this state as aviation centers, and provide for the most economical and effective use of aeronautic facilities and services in those areas.*" (Italics supplied.)

The governing body of the corporation, by the terms of § 4 of the act (Minn. St. 360.104), consists of nine persons appointed variously by the governor or by elected officials in the contiguous cities of the first class.

The powers of the corporation are set out in § 7 (Minn. St. 360.107) and include the powers to acquire real and personal property; to exercise the right of eminent domain; to sue and be sued; to contract; to take over municipal airports; to acquire and operate existing non-municipal airports; to construct and equip new airports; to acquire air rights over private property as needed to assure safe approaches to the landing areas of all airports controlled by it; to maintain suitable markings and lights for daytime or nighttime marking of buildings or other structures or obstructions for the safe operation of aircraft utilizing airports maintained by it; to accept from the United States or the State of Minnesota, or any of their agencies, money or other assistance for the purpose of carrying out the purposes of the act and developing airports and other aeronautic facilities; and to enter into such contracts with the United States or any of its agencies as it may deem proper and consistent with the purposes of the act.

Section 9 of the 1943 law (Minn. St. 360.109) provides in part:

"Immediately after the adoption and filing of its permanent plan of operation, the corporation shall proceed to exercise the powers herein granted. *These powers may be exercised at any place within 25 miles of the city hall of either city.*" (Italics supplied.).

The 1945 session of the legislature adopted c. 303 (Minn. St. 360.011 to 360.075). Definitions included in § 1 of the Act (§ 360.013) which are of present significance are:

"Subd. 22. *'Airport Hazard'* means any structure, object of natural growth, or use of land, which obstructs the air space required for the flight of aircraft in landing or taking off at any airport or restricted landing area or is otherwise hazardous to such landing or taking off."

"Subd. 25. *'Structure'* means any object constructed or installed by man, including, but without limitation, buildings, towers, smokestacks, and overhead transmission lines."

"Subd. 26. *'Tree'* means any object of natural growth."

"Subd. 28. *'Airport hazard area'* means any area of land or water upon which an airport hazard might be established if not prevented as provided in this act." (Italics supplied.)

Section 25 of the 1945 law (Minn. St. 360.062) provides:

"It is hereby found that an *airport hazard* endangers the lives and property of users of the airport and of occupants of land in its vicinity, and also if of the obstruction type, in effect reduces the size of the area available for the landing, taking-off, and maneuvering of aircraft, thus tending to destroy or impair the utility of the airport and the public investment therein. Accordingly, it is hereby declared: (1) that the creation or establishment of an *airport hazard* is a public nuisance and an injury to the community served by the airport in question; (2) that it is therefore necessary in the interest of the public health, public safety, and general welfare that the creation or establishment of *airport hazards* be prevented; and (3) that this should be accomplished to the extent legally possible, by exercise of the police power, without compensation. It is further declared that both the prevention of the creation or establishment of *airport hazards* and the elimination,

removal, alteration, mitigation, or marking and lighting of existing *airport hazards* are public purposes for which political subdivisions may raise and expend public funds and acquire land or property interests therein." (Italics supplied.)

Then follows § 26, of special significance in the case before us, subd. 1 of which reads:

"In order to prevent the creation or establishment of *airport hazards*, every municipality having an *airport hazard area* within its territorial limits may adopt, amend from time to time, administer, and enforce, under the police power and in the manner and upon the conditions hereinafter prescribed, airport zoning regulations *for such airport hazard area*, which regulations may divide such area into zones, and, within such zones, specify the land uses permitted and regulate and restrict the height to which structures and trees may be erected or allowed to grow, such power to be exercised by metropolitan airports commissions in contiguous cities of the first class in and for which they have been created." (Italics supplied.)

Section 27, subd. 2, (Minn. St. 360.064, subd. 2) provides:

"In the event of conflict between any airport zoning regulations adopted under this act and any other regulations applicable to the same area, whether the conflict be with respect to the height of structures or trees, the use of land, or any other matter, and whether such other regulations were adopted by the municipality which adopted the airport zoning regulations or by some other municipality, the more stringent limitation or requirement shall govern and prevail."

Section 28, subds. 1, 2, (Minn. St. 360.065, subds. 1, 2) reads:

"*No airport zoning regulations shall be adopted*, amended, or changed under this act *except* by action of the governing body of the municipality or county in question, or the joint board provided for in section 26, subdivision 3, *after a public hearing in relation thereto*, at which parties in interest and citizens shall have an opportunity to be heard. * * *

"Prior to the initial zoning of any airport hazard area under this

act, the municipality, county, or joint airport zoning board which is to adopt the regulations shall submit its proposed regulations to the commissioner in order that he may determine *whether it conforms to the minimum standards prescribed by him*. He shall immediately examine such proposed regulations and report to the municipality, county, or joint airport zoning board his approval, or his objections, if any. If any objections are made by him *on the ground that such regulations do not conform to the minimum standards prescribed by him* for the class of airport involved, the municipality, county, or joint zoning board *shall make such amendments as are necessary to meet such objections.* The governing body of the municipality or county or the joint airport zoning board shall not hold its public meeting or take other action until the proposed regulations are approved by the commissioner *as conforming to such minimum standards.*" (Italics supplied.)[2]

Section 29, subd. 1, (Minn. St. 360.066, subd. 1) provides:

"All airport zoning regulations adopted under this act shall be reasonable, and none shall impose any requirement or restriction which is not reasonably necessary to effectuate the purposes of this act. In determining what regulations it may adopt, each municipality, or county, or joint airport zoning board, shall consider, among other things, the character of the flying operations expected to be conducted at the airport, the nature of the terrain within the airport hazard area, the character of the neighborhood, and the uses to which the property to be zoned is put and adaptable."

In 1957 (by amendment incorporated in L. 1957, c. 610), § 26, subd. 1, of L. 1945, c. 303, was amended to read as it now appears in Minn. St. 360.063, subd. 1. *It is this law we must interpret* and it reads:

---

[2]By amendment effective April 1, 1957, it is required that airport zoning regulations adopted by M.A.C. be filed with the register of deeds in each county in which a zoned area is located and it provided: "Substantive rights existing prior to the passage of this act and heretofore exercised shall not be affected by the filing of such regulations." L. 1957, c. 272, § 2.

"(1)   In order to prevent the creation or establishment of *airport hazards*, every municipality having an *airport hazard area* within its territorial limits may adopt, amend from time to time, administer, and enforce, under the police power and in the manner and upon the conditions hereinafter prescribed, airport zoning regulations for such *airport hazard area*, which regulations may divide such area into zones, and, within such zones, specify the land uses permitted and *regulate and restrict the height to which structures and trees may be erected or allowed to grow*.

"(2)   For the purpose of promoting health, safety, order, convenience, prosperity, general welfare and for conserving property values and encouraging the most appropriate use of land, the municipality may regulate the *location, size and use of buildings and the density of population* in that *portion of an airport hazard area* under approach zones for a distance not to exceed two miles from the airport boundary and in other portions of an airport hazard area for a distance not to exceed one mile from the airport boundary.

"(3)   The powers granted by this subdivision may be exercised by metropolitan airports commissions in contiguous cities of the first class in and for which they have been created.

"(4)   In the case of airports owned or operated by the state of Minnesota such powers shall be exercised by the state airport zoning boards or by the commissioner of aeronautics as authorized herein." (Italics supplied.)

### The Proposed Ordinance

The ordinance submitted by M.A.C. to the commissioner as required by § 360.065, set out above, provides in part:

"Sec. 3.   Height Limits. Except as otherwise provided in this ordinance, no structure shall be located, constructed, altered or maintained and no tree shall be allowed to grow above the applicable height limit."[3]

---

[3]We do not attempt to decipher the complicated method by which the ordinance divides the M.A.C. area into zones and fixes with respect to each an applicable height limit.

"Sec. 4. Use Restrictions. Except as provided in Section 8,[4] it is unlawful to put any land in the *airport hazard area* to any of the following uses:

"(1) Any use which would create unreasonable interference with radio communication between aircraft and the airport or communication facilities in the vicinity thereof, or which would unreasonably interfere with other navigational aid or devices used by the airport or by aircraft using said airport, or with electronic navigational aids that may at the time of such interference be established for the vicinity thereof.

"(2) Any use which would materially reduce the visibility within the afore-mentioned airport hazard area or which would make it difficult for flyers in the vicinity of or on the airport to distinguish between airport lights or markers or other navigational lights or markers in the vicinity of the airport, or which would result in glare in the eyes of flyers using the airport.

"(3) The conduct of any business or occupation, or any use, which business, occupation or use, by its very nature is inherently dangerous or hazardous as respects likelihood of causing or resulting in injury or damage to aircraft or the occupants thereof flying to and from or in the vicinity of said airport, or persons present at or in the vicinity of said airport or lawfully in the vicinity thereof.

"(4) Any other use or uses which would be dangerous or hazardous to the safety of aircraft using the airport or maneuvering in the vicinity thereof or to the health, safety or general welfare of airport personnel and other persons using said airport." (Italics supplied.)

### Disposition of Issues as Between M.A.C. and Commissioner

To resolve the issues as between M.A.C. and the commissioner it is declared that:

(1) The legislature of the State of Minnesota has delegated zoning authority to M.A.C. by L. 1945, c. 303, as amended by L. 1957,

---

[4]Provision is made in the ordinance for nonconforming uses, permits, and variances.

c. 610, now incorporated in Minn. St. 360.063, within that part of the State of Minnesota and to the extent therein specified.

(2) The authority of M.A.C. to adopt zoning ordinances in an airport hazard area, i.e., an area where a structure, object of natural growth, or use of land might be established which, if not prevented by zoning legislation, would obstruct the air space required for the flight of aircraft in landing or taking off at any airport or restricted landing area or be otherwise hazardous to such landing or taking off,[5] is to be found in subd. 1(1) of the section as amended. (Minn. St. 360.063, subd. 1[1]). The area within which M.A.C. may zone pursuant to the authority granted by this subdivision is limited to such part of its territorial jurisdiction, i.e., all places within 25 miles of the city hall of either city,[6] as constitutes an airport hazard area.

Since an airport hazard area is any area of land or water upon which an airport hazard might be established, and an airport hazard is any structure, object of natural growth, or use of land which obstructs the air space required for, or is otherwise hazardous to, aircraft while landing and taking off, it is likely that obstructions which would not be such a hazard at one stage of aeronautical development could be at another. Generally, a zoning ordinance adopted pursuant to the power granted by subd. 1 which limits the uses of private property by exercise of the police power must operate prospectively only.[7] Therefore, the exact physical limits of any airport hazard area cannot be permanently defined and must be left subject to change from time to time so as to reflect and correspond to the landing and take-off requirements of the aircraft which are permitted to use the facilities located in the area involved. *We do not undertake to determine what that area may be on the record now before us.*

(3) Authority to adopt zoning ordinances which may restrict the

---

[5]See definitions of "airport hazard" and "airport hazard area" (Minn. St. 360.013, subds. 22, 28) set out above.

[6]See, Minn. St. 360.109, set out above. Of necessity, the territorial jurisdiction ends at the state line.

[7]See, Minn. St. 360.065, subd. 2; 101 C. J. S., Zoning, § 38; 58 Am. Jur., Zoning, § 146.

vertical level above which the space over land may not be used for certain purposes but which may also regulate and restrict the use of land without regard to the height of space encroachment incidental to such use is to be found in Minn. St. 360.063, subd. 1(2), which permits regulation of the location, size, and use of buildings and the density of population. In so far as this authority exceeds that given by the provisions of subd. 1(1) of the section, it can be exercised only in "approach zones for a distance not to exceed two miles from the airport boundary and in any other portion of an airport hazard area for a distance not to exceed one mile from the airport boundary."

We note that while the scope of possible land use restriction under subd. 1(2) is broader than that permitted under subd. 1(1) the territory in which the power granted by subd. 1(2) can be exercised is more limited. This is so because subd. 1(1) applies to so much of an airport hazard area as lies within 25 miles of the city hall of either of the cities of the first class, while subd. 1(2) applies only to *"that portion of"* such airport hazard area as lies within the two-mile and one-mile distances from an airport boundary specified in subd. 1(2).

(4)   The proposed zoning ordinance having been submitted to the commissioner, it became his duty to "immediately examine" the proposed ordinance and report to M.A.C. (a) his approval or (b) his objections, if any.[8]

The refusal of the aeronautics commissioner to do one or the other is without justification and creates a justiciable controversy since his inaction prevents M.A.C. from taking the additional steps[9] preliminary to the adoption of a proper ordinance.

(5)   While the aeronautics commissioner is obligated either to approve the proposed ordinance or state his objections to the proposal, M.A.C. will not be authorized to proceed with a public hearing on the proposed ordinance as contemplated by L. 1945, c. 303, § 28, if objections of the aeronautics commissioner are based on the ground that the *"regulations do not conform to the minimum standards pre-*

---

[8]See, Minn. St. 360.065, subd. 2, set out above.

[9]As to the procedure to be followed by M.A.C. after action by the aeronautics commissioner, see Minn. St. 360.065, subd. 1, set out above.

*scribed by him for the class of airport involved.*" (Italics supplied.) This is so because objections based upon this ground (as distinguished, for example, from objections based upon the ground that the area covered by the proposed ordinance is excessive) suspend further proceedings preliminary to the adoption of the proposed ordinance until M.A.C. makes "*such amendments as are necessary to meet such objections*" so that the proposed ordinance will conform "*to such minimum standards.*" (Italics supplied.) While the suspensive effect of objections of the aeronautics commissioner occurs only when his objections are based on the ground that the proposed airport zoning regulations do not "conform to the minimum standards prescribed by him," this does not bar the commissioner from reporting to M.A.C. such objections to the proposed regulations as he may have on grounds other than the failure of the proposed ordinance to require compliance with such minimum standards as the commissioner may have adopted. But M.A.C. is required to amend its proposed ordinance to comply with objections made by the commissioner as a condition precedent to further proceedings only when and to the extent such objections are based upon M.A.C.'s failure to respect in the proposed ordinance the "*minimum standards*" prescribed by the commissioner. (Italics supplied.)

### Disposal of Intervenors' Claims

Except in so far as we have determined that the authority of M.A.C. to promulgate zoning regulations to control the vertical use of space extends to such part of that area lying within 25 miles of the city hall of either city of the first class as is ultimately determined to be within an airport hazard area, this decision is without prejudice to any claims of the intervenors. The statutes contemplate a public hearing with respect to the proposed ordinance after notice as specified in L. 1945, c. 303, § 28. It is assumed that intervenors will be afforded an opportunity to be heard at that time on any matter affecting a legitimate interest of any of them. Until an ordinance is finally adopted by M.A.C. it is premature to determine whether the area in which the proposed ordinance will be effective, if and when adopted, exceeds the limitations appearing in the statute with re-

spect to ordinances of the type described in each of the subdivisions of that statute. Neither is it possible at this time to determine whether the operative effect of an ordinance proposed, but not yet adopted, will be to deprive any person of property without just compensation or will represent an unreasonable exercise of the police power.[10] We cannot anticipate and settle problems which may arise as between M.A.C. and the cities and villages located within its territorial ambit if a zoning ordinance promulgated by one of the legislatively created governmental bodies comes in conflict with an ordinance promulgated by another. For the present we must assume that the matter will be fully explored at the public hearing contemplated by the statute and that the proposed ordinance will be amended and refined, in so far as necessary, so that in the end only those requirements or restrictions will be imposed which will be reasonably necessary to effectuate the purposes of the enactment as required by § 360.066.

The order of the trial court denying plaintiff's motion for amended findings or a new trial is reversed and the matter is remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

---

[10]Note, Jankovich v. Indiana Toll Road Comm. 379 U. S. 897, 85 S. Ct. 493, 13 L. ed. (2d) 439.